A06A1346. JACKSON v. THE STATE.

(639 SE2d 403)

ADAMS, Judge.

Dwayne Jamae Jackson shot Michael Mayes and Louis Cabello in the parking lot of Westgate Apartments in Garden City on March 20, 2001. Mayes died as a result of his wounds, but Cabello survived. Jackson later admitted shooting the two men, but claimed that he did so in self-defense. A jury convicted Jackson of two counts of aggravated assault and two counts of possession of a firearm during the commission of a crime.[1] Following his conviction, Jackson filed a motion for new trial asserting that several improper communications between the bailiff and the jury had unfairly chilled jury deliberations. The trial court denied Jackson's motion and Jackson appeals.

At the hearing on his motion for new trial, Jackson presented the testimony of the jury foreman and the deputy sheriff assigned to assist the jury. The foreman testified that the deputy brought all the evidence into the jury room, including videotapes and audio tapes that had been played during the trial. He asked the deputy whether the jury could have a tape player to review this evidence, but the deputy told him that they did not have a video player for the jury to use. The foreman stated that the jury wanted to view a videotape of the crime scene during their deliberations. Later, the jury asked the deputy if they could view a diagram of the crime scene that had been used during the trial. The judge had indicated at the close of the evidence that the diagram would be left up for the jury to use. But the deputy told them that they could not go back into the courtroom to view the diagram; he told them that they should have drawn the drawing in their notes. The foreman stated that the jury wanted to look at the diagram during their consideration of Jackson's claim of self-defense.

---

[1] Jackson was indicted by a grand jury on one count of malice murder, two alternate counts of felony murder, two separate counts of aggravated assault, two alternate counts of possession of a firearm during the commission of a crime and one separate count of possession of a firearm. The jury acquitted him on the remaining charges.

Nevertheless, the foreman stated that the deputy was trying to be helpful and told them that they could ask the judge for anything they wanted. He told them that they could write down their request and he would take it to the judge. And the foreman always understood that the judge was the final arbiter of any matter involved with the trial. But the foreman stated that he "assumed" from the manner of the deputy's response to these two requests that it would not be "worth it" to ask the judge.

In addition, the foreman testified that the jury had questions regarding the judge's instructions on self-defense. They asked the deputy about it, and he told them that they could write their questions down and he would take them to the judge. He said that he would take them out into the courtroom and the judge would address their questions. But the foreman said that the deputy "led [him] to believe" that the judge would simply repeat the instructions they had already been given. He inferred from the deputy's comments that asking for further instruction would not help.

The deputy testified that the foreman had seen a rolling cart with a videotape player out in the hall and asked him to bring it in to the jury room so the jury could play the tapes. He also recalled that several jurors asked to see the diagram used during the trial.[2] He remembered these questions because the jury wanted him to go out and get the items right away, and he told them "that wasn't going to happen." Instead, the deputy told the foreman that he needed to write a note to the judge and get his approval before the jury could use the tape player. Similarly, he told the jurors who asked to see the diagram that they needed to write the judge a note to get permission before he could let them view it.

The deputy did not specifically recall the jury's question regarding the judge's self-defense charge. But whenever a jury asks such a question, he tells them to write the question down on a piece of paper, sign it and date it and he will take it to the judge, because "he's the one that makes that decision." He said that he never tried to encourage or discourage the jury in this case from asking the judge any questions, nor did he imply that it would be useless to ask the judge for something.

In denying the motion for new trial, the trial judge found that no improper communications occurred between the deputy and the jury. Rather, he found that the deputy properly instructed the jurors to write a note directing their questions to the judge, but the jury failed to do so. In addition, the judge noted that, due to the passage of time,

---

[2] The diagram was not admitted into evidence.

the jury foreman had trouble remembering the specifics of his conversations with the deputy and had made certain assumptions based on the deputy's statements. He concluded that the deputy's communications were not prejudicial to Jackson.

In reviewing these conclusions, we must determine whether the trial court abused its discretion in denying the motion. *Mondy v. State*, 229 Ga. App. 311, 312 (1) (494 SE2d 176) (1997). And in making that determination, we must consider the deputy's proper role in communicating with the jury:

> The bailiff is the means by which the jury communicates with the trial court, but the bailiff is not permitted to act as an interpreter of the jury's questions and the trial court's answers. Under no circumstances may a bailiff answer jury questions related to the jury's decision-making process based on the bailiff's perception of the question, the law, or the evidence.

(Citations omitted.) *Turpin v. Todd*, 271 Ga. 386, 389-390 (519 SE2d 678) (1999). And when a defendant establishes that such a communication between a bailiff and the jury occurred, the State has the burden of rebutting, by proof, the presumption of harm. *Mercer v. State*, 169 Ga. App. 723, 728 (6) (314 SE2d 729) (1984).

Here, the State sought to meet that burden by cross-examining Jackson's witnesses. Compare *Mercer v. State*, 169 Ga. App. at 728 (6) (where State did "absolutely nothing" to rebut the presumption). And the evidence showed that when the jury asked to view certain items or to get further instruction from the judge, the deputy directed them to put their request in writing to the judge. The foreman acknowledged that the deputy told him this on several occasions, and he understood that the judge was the final arbiter of these matters. He knew, for example, that the judge had told the jurors that he was retaining the diagram for their further use if they needed it and he knew that he could write a note asking to view it. Although the foreman concluded that asking the judge would not prove useful, he could not recall whether the deputy had actually told him so or whether he just assumed so based on the deputy's statements or intonations. He acknowledged that he could not remember the deputy's words. The deputy stated that he never discouraged the jury from asking the judge a question or implied that asking for something would be useless.

Thus, even though the jurors knew that they could ask the judge to view the requested items or to give further instruction, they chose not to do so. Whether that decision was based upon a statement made by the deputy or based upon inferences that the foreman drew for

himself was a question of credibility. On motion for new trial, it is the duty of the trial judge to determine witness credibility. *Moten v. State*, 252 Ga. App. 222, 225 (5) (b) (554 SE2d 553) (2001).

Based upon the record, we cannot say that the trial judge abused his discretion in denying Jackson's motion for new trial on these grounds. Compare *Turpin v. Todd*, 271 Ga. at 388-391 (sentence vacated where bailiff answered jury's written question himself without showing it to the trial judge).

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 29, 2006.

*Stephen R. Yekel*, for appellant.

*Spencer Lawton, Jr., District Attorney, Arvo H. Henifin, Assistant District Attorney*, for appellee.