## A09A1451. GRAVITT v. THE STATE.
(687 SE2d 150)

BARNES, Judge.
Kent Lawrence Gravitt appeals his convictions of eight counts of serious injury by vehicle, driving under the influence, reckless driving, failure to maintain lane, and improper passing. Gravitt's

---

132

sole enumeration of error is that his defense counsel's performance deprived him of the effective assistance of counsel. We must agree and reverse the trial court's ruling to the contrary.

Gravitt's convictions arose from a two-car collision that occurred on a four-lane divided highway when one car crossed the median and crashed into another car heading in the opposite direction. The drivers of both cars were seriously injured. Even though Gravitt was not involved in the collision directly, witnesses testified that he caused the accident by passing a car on the right shoulder of the road, which caused that car to swerve left and "spook" the driver of the car next to him traveling in the fast lane, who then lost control, crossed the median, and collided with an oncoming car. Gravitt called no witnesses in his defense and merely argued that his actions were not the proximate cause of the accident.

Gravitt timely moved for a new trial and then amended his motion to assert his claim that his trial defense counsel was ineffective. After a hearing on the motion, the trial court found that certain aspects[1] of trial counsel's work were ineffective, such as failing to properly investigate the case, interview prospective witnesses, or call witnesses and present evidence at trial, but also found that his performance did not prejudice Gravitt's defense.

Under our law,

> [t]o prevail on a claim of ineffective assistance, a defendant must show that counsel rendered deficient performance and that actual prejudice resulted. Counsel are strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and counsel's performance is evaluated without reference to hindsight. A petitioner has suffered actual prejudice only where there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Ineffective assistance claims are mixed questions of law and fact. We accept the [trial] court's findings of fact unless clearly erroneous and independently apply the law to those facts.

(Citations and punctuation omitted.) *Head v. Hill*, 277 Ga. 255, 266 (VI) (587 SE2d 613) (2003). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined

---

[1] The trial court found meritless Gravitt's claims that his counsel failed to conduct a meaningful cross-examination, failed to make certain objections, failed to file motions, and failed to advise Gravitt properly on sentencing.

the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U. S. 668, 686 (104 SC 2052, 80 LE2d 674) (1984).

1. Gravitt contends his defense counsel was ineffective because he failed to investigate his case reasonably, failed to call two witnesses who would have testified that Gravitt did not cause the accident that led to his convictions, and failed to request a continuance when he could not locate the witnesses. In deciding Gravitt's new trial motion, the trial court concentrated on the defense counsel's actions regarding two witnesses, Douglas and Jeremy Powers, a father and son who were passengers in Gravitt's truck at the time of the incident giving rise to these charges. The court found that counsel did not even attempt to locate Jeremy Powers and made "limited efforts to locate" Douglas Powers. The court noted that, although counsel is not obliged to investigate all information provided by a defendant or all potential theories of the case, counsel is obliged to conduct a reasonable investigation. Thus, the court found that Gravitt's defense counsel made "minimal attempts to locate these witnesses," and waited until close to the trial date to subpoena Douglas Powers, despite knowing he would be hard to locate. Also, counsel never went to the local jail to attempt to locate these potential witnesses. The court found that without

> diligent efforts to locate witnesses and speak to them, trial counsel cannot make a reasonable tactical decision regarding whether or not to call witnesses. Trial counsel had been retained in this case and there appear to have been no financial barriers that prohibited locating the witnesses. Therefore, the Court does find that trial counsel was ineffective with regards to the necessary investigation into the witnesses in the vehicle. And that based upon this insufficient investigation, trial counsel was not able to make an informed decision as to which witnesses would be called as a matter of trial strategy and was therefore ineffective.

In responding to Gravitt's argument, the State enumerates as error this finding by the trial court and argues that it is clearly erroneous. We find no merit to the State's argument. First, the State cannot and has not tried to cross-appeal the trial court's finding that Gravitt's trial counsel was ineffective. OCGA § 5-7-1; *Brooks v. State*, 206 Ga. App. 485, 489 (3) (425 SE2d 911) (1992). Second, we defer to the trial court's findings of facts in reviewing its ruling on an ineffective assistance of counsel claim unless they are clearly erroneous, and the "clearly erroneous" test is the same as the "any evidence rule." *Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d

518) (2003); *Hanson v. Kent*, 263 Ga. 124, 125 (2) (428 SE2d 785) (1993). Here, the testimony of the Powers and of Gravitt's counsel at the motion for new trial hearing shows that the Powers were readily available if counsel had only tried to locate them. The testimony also revealed that counsel did little or nothing to find them. Thus, the evidence supports the findings of the trial court, which we cannot reverse.

Moreover, whether an attorney's trial tactics are reasonable is a question of law, not fact. *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (2000). Taking into consideration all of defense counsel's failings in this case, *Schofield v. Holsey*, 281 Ga. 809, 812 (II), n. 1 (642 SE2d 56) (2007), we find that the trial court did not err by finding the attorney's actions were deficient.

2. The second prong of *Strickland* requires Gravitt to show that his counsel's deficient performance prejudiced his defense.

> This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U. S. at 687. *Strickland* sets forth the appropriate test for determining prejudice: As noted earlier, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Id. at 693. "[T]he question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695.

In reaching its conclusion that Gravitt failed to satisfy the second prong of *Strickland*, the trial court stated:

> Having satisfied the first prong of the test, the court now turns to the second. To meet the second prong of the test, the defendant must show that he was prejudiced by the ineffectiveness of counsel. To show prejudice in an ineffective assistance case, a defendant must demonstrate that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that, but for counsel's unprofessional errors, the result of the proceed-

ings would have been different. *Franks v. State*, 278 Ga. 246 [(599 SE2d 134)] (2004).

The trial court found that the key issue was whether the Powers' testimony concerning Gravitt's actions established a reasonable probability of a different outcome. The trial court noted that its function was to judge the credibility of the witnesses who testified at the motion for new trial hearing and to resolve any conflicts in the testimony. See *Finch v. State*, 287 Ga. App. 319, 321 (1) (b) (651 SE2d 478) (2007). The trial court then proceeded to measure the credibility of the Powers' testimony, not against the witnesses who testified at the hearing, but against the witnesses who testified at Gravitt's trial, and concluded that their testimony would have had no effect on the trial's outcome. The court found

> that the cumulative weight of the eyewitnesses' testimony is such that even had the jury found [the Powers'] testimony to be credible, it would not have been sufficient to explain the Defendant's subsequent behavior after leaving the roadway. The eyewitness testimony makes clear that the accident was caused not by the Defendant initially veering off the roadway but by his re-entry into the road and ensuing reckless driving.

In this regard, the trial court erred by determining how the jury would have judged the credibility of the witnesses. Although a trial court properly judges the credibility of witnesses who testify at a motion for new trial hearing regarding disputed issues, for example relating to how the trial was conducted or between a defendant and his trial counsel, see *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995), here the trial court judged the credibility of the witnesses had they testified at trial, and that is "solely a matter to be resolved by the jury." *Hawkins v. State*, 254 Ga. App. 868, 869 (563 SE2d 926) (2002). "It is the jury's prerogative to choose what evidence to believe and what to reject." *Trammell v. State*, 253 Ga. App. 725, 726 (1) (560 SE2d 312) (2002).

Further, the trial court's credibility finding fails to consider that in closing argument, the State pointed to Gravitt's failure to call as witnesses the passengers in his truck and argued that they were not called because they might testify against Gravitt. Moreover, the trial court's finding does not consider the full scope of the Powers' testimony. Douglas Powers, who was the front seat passenger in Gravitt's truck, testified that Gravitt did not appear to be under the

influence of alcohol or drugs,[2] that the traffic was fast and crowded, that Gravitt's driving did not make him feel unsafe, that Jeremy Powers "hollered" for Gravitt to pull onto the shoulder, and that Gravitt did so to avoid the car in front of him that braked suddenly because cars on Gravitt's left prevented him from going in that direction. More importantly, Douglas Powers testified that when Gravitt pulled back on the highway he did not cut off anyone, and that they did not stop because no one in the truck knew an accident occurred.

Jeremy Powers testified that if he had been called, he would have testified at Gravitt's trial that he was a back seat passenger in the truck, that Gravitt did not appear to be under the influence of drugs or alcohol, that he did not ingest drugs or alcohol in his presence, that Gravitt's driving did not worry him, and that Gravitt pulled on the shoulder because the vehicle in front of them "slammed on brakes" and that was the only way to avoid an accident. He testified that he called to Gravitt to get on the shoulder to avoid the accident, and that when Gravitt pulled back into the right lane of traffic from the shoulder, he did not see him cut anyone off. He described Gravitt's driving as "one clean pass." He also did not see or hear the accident, only became aware of it after it happened, and did not think they were involved in any way.

We note that the Powers' testimony that Gravitt did not cut off any other driver is consistent with other testimony that the driver of the car that swerved to the left, causing the driver of the car beside him to swerve, lose control, and cross the median, never left his lane of travel.

Without the Powers' testimony denying that Gravitt appeared to be under the influence or was driving recklessly, and explaining why he passed on the shoulder of the road, trial counsel virtually conceded Gravitt's guilt of those charges.

> The last two counts of the indictment are for the charges of failure to maintain lane and improper passing. Folks, y'all heard what Kent told Trooper Richardson about passing the car on the grass. There's not a whole lot that I'm going to say about those two charges. Again they are what they are. Y'all heard the evidence on that.
>
> The State has also charged Mr. Gravitt with reckless driving, for driving in a manner that was in disregard for the safety of persons and property of others. Again I'm not

---

[2] Gravitt's urine tested positive for methamphetamine and during an interview after the collision, he admitted he had used methamphetamine three days earlier.

going to spend a whole lot of time talking about that particular charge in and of itself. The evidence is what the evidence is. And it is up to y'all to decide whether what y'all heard about that driving was reckless.

Then counsel did much the same thing regarding the serious injury by motor vehicle charges:

Now, the first choice, which I think everybody in this courtroom wish had been the choice that was made, was for Kent Gravitt not to try to pass the Whitlock car, because if that choice had been made, none of us would be here right now, and [the injured people] would hopefully be in good health.

Then, relying upon the testimony of the State's witnesses, he argued that the car Gravitt passed never left its lane of travel and thus Gravitt was not the cause of the accident. Counsel closed by saying, "As to the other charges, as I said, that's for y'all to decide. But as those first nine counts anyway, Kent Gravitt and I ask you to return verdicts of not guilty."

Given that the Powers' testimony directly contradicted that of the other witnesses, and contrary to the trial court's conclusion could have explained Gravitt's conduct after he left the roadway, we hold that the trial court erred by finding that trial counsel's failure to investigate the case, locate the Powers, and call them as witnesses at trial was not sufficient to prejudice Gravitt's case within the meaning of *Strickland*.

Gravitt was not required to show that his counsel's deficient conduct more likely than not altered the outcome in the case. *Strickland*, supra, 466 U. S. at 693. The question before us is whether a reasonable probability existed that, absent his counsel's errors, the factfinder would have had a reasonable doubt respecting guilt. Id. at 695. Because of his counsel's failure to investigate the case, interview the passengers in Gravitt's truck, and call them as witnesses to say Gravitt did not cut off another car when he re-entered the roadway, we cannot say that no reasonable probability existed that, absent his counsel's errors, the factfinder would not have had a reasonable doubt respecting Gravitt's guilt. *State v. McMillon*, 283 Ga. App. 671, 673 (1) (642 SE2d 343) (2007), overruled in part on other grounds in *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009); *Goldstein v. State*, 283 Ga. App. 1, 4-6 (3) (a), (b) (640 SE2d 599) (2006) (witness testimony at motion for new trial hearing established prejudice).

Accordingly, the trial court erred by denying Gravitt's motion for a new trial.

*Judgment reversed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 18, 2009.

*Stephen J. Lichtenstein*, for appellant.
*Lee Darragh, District Attorney, Vanessa E. Sykes, Assistant District Attorney*, for appellee.