**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0146. GILLESPIE v. THE STATE

A15A0149. COLLINS v. THE STATE.

RAY, Judge.

Larry Daymond "Mon" Gillespie and Legregory Collins, along with other co-defendants, were indicted for armed robbery, aggravated assault, and aggravated battery. Following a jury trial, Gillespie was convicted on August 9, 2011, of armed robbery and aggravated assault. He was acquitted of aggravated battery. Collins was convicted of armed robbery, aggravated assault, and aggravated battery. Both men moved for new trials , and the trial court granted those motions, in part, as to sentencing issues. Collins and Gillespie now appeal from the partial denial of their motions for new trial.

In Case No. A15A0146, Gillespie contends that the trial court erred in allowing the State to introduce evidence of the circumstances of his arrest, in denying his motion for mistrial, and in admitting his booking photograph over objection. He also argues that his constitutional rights were violated because he was not present at bench conferences during jury selection. In Case No. A15A0149, Collins mirrors Gillespie's enumerations as to the admission of his booking photo and his absence from bench conferences during voir dire. The two appeals are consolidated for our review. For the reasons that follow, we vacate and remand as to Gillespie in Case No. A15A0146, and we reverse and remand for a new trial as to Collins in Case No. A15A0149.

Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that on February 16, 2010, Athens-Clarke County police were called to the scene of an armed robbery at an apartment where Bryan Baker and Damion Scott James lived. Several friends of Baker's and James's also were there. A young woman named Heidi Elrod called Baker to ask if he had any marijuana for sale because her friend, Nikki Hancock, a co-defendant in the case, had contacted her trying to find some. Elrod had previously been on a three-way call with Hancock and another co-defendant, Robert Gresham, who said he also wanted to buy marijuana. She arranged a meet-up at

2

Baker's apartment. Gresham got a ride from his cousin, and they picked up Collins and Gillespie along the way. Gresham testified that he told Collins that he was planning to steal the marijuana, and Gresham obtained a pistol from another individual. Gillespie had his own gun, which he later gave to Collins.

When they got to the apartment, Elrod, Gresham, and Collins went in and were shown "about a pound and a half of reefer." Gresham wanted four pounds, so Baker retrieved additional marijuana in plastic bags. Gillespie then entered and sat down at the table to negotiate price, although the plan was still on to steal the drugs. Gresham testified that he and Collins then "pulled our guns out" and ordered the occupants of the apartment onto the ground. Collins was holding Gillespie's gun when the victims were ordered to the ground. Collins struck Baker across the face with his gun, injuring him.

Gresham testified that he gave his gun to Gillespie, and one of the victims testified that he and the other occupants of the apartment were then held at gunpoint by a man with "twists" in his hair. Another victim testified that a tall black man with "braids" grabbed his guitar and acted as if he would hit him with it. Mug shots of the co-defendants show that only Gillespie had twists or braids in his hair; Collins and

Gresham's photos show close-cropped hair. The defendants took cash, marijuana, a camera, and a handgun from the apartment.

Surveillance video from the apartment parking lot showed that the car in which the defendants were riding both arrived at and left the apartment complex. Collins' cousin, who drove the vehicle, testified that she dropped the defendants off so they could "purchas[e] some weed" and waited in her vehicle for them. She later saw them "running" to her vehicle. Collins, Gillespie, and Gresham all got in her car, and they fled the scene. The robbers later divided up the marijuana. Neither Collins nor Gillespie contests the sufficiency of the evidence.

Both Collins and Gillespie argue that the trial court erred because they were not present at bench conferences during jury selection at which several potential jurors were discussed and excused, and one potential juror was questioned and discussed.

It is true that "the constitutional right to be present does not extend to situations where the defendant's presence would be useless" – for example, during bench conferences dealing with logistical or procedural matters or questions of law about which a defendant presumably has no knowledge. (Citation and punctuation omitted.) *Heywood v. State*, 292 Ga. 771, 774 (3) (743 SE2d 12) (2013). However, our Supreme Court has unequivocally held that a defendant is entitled to be present

4

during discussions that involve "whether to replace prospective jurors." Id. at 774-775 (3), citing *Zamora v. State*, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012) (holding that the defendant "clearly had a constitutional right to be present during the proceedings at which one of the jurors trying his case was removed") (citation omitted); and *Sammons v. State*, 279 Ga. 386, 387 (2) (612 SE2d 785) (2005) ("Proceedings at which the jury composition is selected or changed are a critical stage at which the defendant is entitled to be present") (footnote omitted).

"Although counsel may waive a defendant's presence, in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him." (Footnote and punctuation omitted.) Id. In this context, a defendant's presence means that he can "see and hear" the proceedings. *Zamora*, supra at 518 (7) (b). Any denial of the right to be present under the Georgia Constitution is not subject to harmless error review on appeal and is presumed prejudicial. *Peterson v. State*, 284 Ga. 275, 279 (663 SE2d 164) (2008).

For reasons of convenience, we will address Case No. A15A149 first, and Case No. A15A0146 second.

5

*Case No. A15A0149*

(1) (a) *Collins*. At the motion for new trial hearing, Collins's counsel testified that his client was not present during the bench conferences; he did not believe that he told his client that there was a right to be present; that while "in a general sense" Collins's counsel was familiar with cases discussing a defendant's right to be present during jury selection, he had never thought about or researched whether his client had a right to be present and could not recall ever advising a client of the right to be present during bench conferences for jury selection. He also did not recall telling Collins what occurred at the bench conferences.

Collins testified that although he was in the courtroom, he could not hear what was said and that his lawyer did not tell him about his rights in this context or tell him what was discussed. Collins's counsel testified that he attempted to speak in a voice that could not be heard by others in the courtroom during the bench conferences, and counsel for the State twice mentioned that the lawyers were whispering during the conferences.

The State argues, inter alia, that Collins had no knowledge that would have assisted his trial counsel during the bench conferences,[1] and the trial court's order on motion for new trial determined that

> [T]he [c]ourt does not find that the Defendant himself or through counsel sought to participate, and does not find that counsel failed to inform the Defendant after the bench conferences what had transpired. The [c]ourt also *does not find that, had the Defendant participated, he would have had any knowledge, thoughts or input that could have assisted his counsel or his case*. Because there is no evidence of any meaningful relationship between the Defendant's presence or absence at these bench conferences, *which focused on essentially legal argument*, and the Defendant's opportunity to defend against the charges against him, the [c]ourt concludes that the motion fails on this ground.

As an initial matter, the above-referenced determination indicates that the trial court disbelieved either Collins or his trial counsel or both. While credibility determinations are, without question, for the trial court, see *Finch v. State*, 287 Ga. App. 319, 321 (1) (b) (651 SE2d 478) (2007), even in the face of such disbelief there must be some evidence supporting the trial court's views. *Russell v. State*, 236 Ga.

---

[1] At the hearing on motion for new trial, Collins's counsel testified that he could not recall whether his client had any "personal knowledge" that he would have sought to elicit which could have been helpful during voir dire.

7

App. 645, 650 (2) (512 SE2d 913) (1999) (trial court's findings of fact must be affirmed unless clearly erroneous); *Gravitt v. State*, 301 Ga. App. 131, 133 (1) (687 SE2d 150) (2009) (clearly erroneous test is the same as any evidence test). The burden rests upon the State to supply evidence of waiver. *McKinney v. State*, 251 Ga. App. 896, 902 (5) (555 SE2d 468) (2001). The State indicates in its appellate brief that Collins waived his right to be present. However, Collins's trial counsel testified that he did not believe he told Collins – or had ever told any client – of a right to be present. Collins's trial counsel stated that he did not recall telling Collins what took place during the bench conferences. Such statements do not suffice as evidence to satisfy the State's burden. Rather, they show nothing more than counsel's inability to recall what happened, which amounts to an absence of evidence. No action or statement by Collins himself showed a waiver of his rights. Given that the trial court did not immediately excuse the juror (apparently because it did not want to influence other jurors who might attempt to evade service by also claiming hardship), we fail to see how Collins could have acquiesced in a decision he did not even know was taking place.

Further, as noted above, where a bench conference deals with legal argument about which a defendant has no knowledge, his right to be present is not violated if

8

he is absent from such conferences. *Heywood*, supra. However, contrary to the trial court's determination, the record clearly shows that at least one of the bench conferences at issue did not consist of merely legal argument of which Collins would have had no knowledge. Juror Solomon testified at voir dire that if required to serve, he would suffer financial hardship, his lights would be cut off, and he would be very distracted. The trial court made the *discretionary* decision to excuse him from service for hardship reasons. OCGA § 15-12-1.1; accord *Dorillas v. State*, 224 Ga. App. 336, 337 (1) (b) (480 SE2d 351) (1997). See also OCGA §§ 15-12-163, 15-12-164 (challenges for cause). In this instance, we cannot say that Collins would have been unable to offer his counsel a meaningful opinion as to whether Juror Solomon should be excused. Nor does counsel's failure to recall whether Collins's opinion would have been useful alter this determination. Collins's conviction must be reversed, and he is entitled to a new trial.

(b) Collins also argues that the trial court erred in allowing the admission of his booking photograph, over his objection, because it improperly placed his character at issue. He argues, inter alia, that there was no testimony as to the date on which the booking photograph was taken.

9

"It is well settled that mere admission into evidence of a 'mug shot' of the defendant does not indicate that the defendant was guilty of any previous crime and does not place his character in issue. Neither does reference to such a photograph impermissibly place a defendant's character in issue." (Footnotes omitted.) *Clark v. State*, 285 Ga. App. 182, 184-185 (3) (645 SE2d 671) (2007).

When the State sought to admit the booking photographs of Collins and the other defendants, the prosecutor explained outside the presence of the jury that, inter alia, the purpose was to show how the defendants appeared "on the date they were booked into evidence in the Clarke County jail records. . . . It is for purposes of identification as to how they appeared close in time to the robbery as we can."

We disagree with Collins's contentions that the photograph is prejudicial because it is undated and could indicate a prior arrest. Where, as here, "the jury could not figure out from [the] testimony whether the photograph was related to this offense or a previous arrest[,] . . . the booking photograph in no way suggested that [Collins] was guilty of any previous crimes, [and] the trial court did not abuse its discretion in admitting it." (Footnote omitted.) *Clark*, supra at 185 (3).[2] See also *Mobley v. State*,

---

[2] See generally *Keller v. State*, 231 Ga. App. 546, 548 (4) (499 SE2d 713) (1998) ("The cases we have found requiring reversal involve clear indications of arrests before the charged offenses occurred, and usually contain more definite

198 Ga. App. 497, 499 (4) (402 SE2d 100) (1991) (where jury had no way to discern that a mug shot was made during a prior arrest, photo was admissible). Compare *Roundtree v. State*, 181 Ga. App. 594, 594 (353 SE2d 88) (1987) (photo not admissible where caption revealed that photo was taken on a date prior to the offense in question, thereby indicating a previous arrest of the accused and putting his character in issue).

The State points us to no evidence in the record, nor do we find any, indicating that there was testimony that Collins's appearance had changed between the time the photograph was taken and the time of the crime.[3] However, because the photograph was undated, "the photograph's admission did not suggest that [Collins] was guilty of any previous crime or otherwise inflame the jury." (Citation and punctuation omitted.) *Hunter v. State*, 273 Ga. App. 52, 53 (1) (614 SE2d 179) (2005). Because, for the reasons outlined in Division (1) (a), we are reversing Collins's conviction and

references to other crimes") (citation omitted).

[3] As we discuss in division 2(b) of this opinion, however, there is testimony that co-defendant Gillespie's appearance had changed; thus, the admission of Collins and Gillespie's booking photos at trial was relevant to allow the jury to identify the perpetrators of the robbery and distinguish between them based upon the witnesses' physical description of them at the time of the crime.

11

affording him a new trial, any error in the admission of the photograph was harmless. See id.

*Case No. A15A0146*

2. (a) *Gillespie*. Gillespie was represented at trial by counsel. At the motion for new trial hearing, Gillespie's counsel testified that he was "very aware" that his clients have a right to participate in bench conferences, and while he did not recall discussing that right with Gillespie or asking that Gillespie be given headphones so he could listen, Gillespie's counsel testified that he "typically would tell my client that they have a right to come up[.]" He also did not recall telling Gillespie what happened during bench conferences, but testified that "if I didn't I would be extremely surprised because, I mean, obviously . . . I would tell him just as a matter of course what's going on."

Gillespie testified that his counsel never told him his rights as to bench conferences, that he never signed anything waiving his rights, and that he never told his lawyer he did not want to approach the bench. He said if he had known he could go up to the bench, he would have. He also testified both that he did not remember his attorney telling him what happened during bench conferences and that his attorney did not tell him what happened.

12

First, as discussed in Division (1) (a), not all of the jurors were excused for legal reasons. As a result, contrary to the State's argument, we cannot say that Gillespie would have had no knowledge or ability to assist his counsel in determining whether to argue that Juror Solomon should be excused or retained.

The basis of our analysis, however, turns on a different aspect of the trial court's determination in its order on the motion for new trial. The trial court found

> insufficient credible evidence to support that trial counsel failed to inform the Defendant of his right to be present during bench conferences and failed to inform the Defendant of the bench conference discussions about jurors and jury selection immediately after discussions ended. . . In this case, even had trial counsel not informed the Defendant, the Court finds and concludes that there is no evidence that, had the Defendant participated, he would have had any knowledge, thoughts, or input that could have assisted his counsel or his case."

Because the trial court's order appears to describe only what Gillespie has failed to show, we are unable to discern with certainty whether the trial court is casting the burden of proving waiver on Gillespie or on the State. While Gillespie bears the burden of showing that he was denied the right to be present at bench conferences, see *Gosnell v. State*, 247 Ga. App. 508, 508-509 (1) (544 SE2d 477) (2001), the State bears the burden of showing that Gillespie waived that right. *McKinney*, supra at 902

13

(5). Because the trial court's order is unclear, we must vacate Gillespie's conviction and remand the case for the trial judge to reconsider whether the State has met its burden to show waiver.

(b) Gillespie next contends that the trial court erred in admitting his booking photograph, over his objection, because it improperly placed his character at issue. We disagree.

"It is well settled that mere admission into evidence of a 'mug shot' of the defendant does not indicate that the defendant was guilty of any previous crime and does not place his character in issue. Neither does reference to such a photograph impermissibly place a defendant's character in issue." (Footnotes omitted.) *Clark,* supra at 184-185 (3).

Here, witnesses testified that the perpetrators were black males, and several of the witnesses testified that two of the perpetrators were large and similar in height, and that one had "dreads" or "braids" or "twists" in his hair. A third perpetrator was a smaller or shorter black man. At trial, when the State sought to admit booking photographs of Gillespie and the other two defendants, the prosecutor explained to the court, outside the presence of the jury, that the purpose was to show how they appeared

on the date they were booked into evidence in the Clarke County jail records. . . . It is for purposes of identification as to how they appeared as close in time to the robbery as we can. . . . Moreover, as the testimony has been, Mr. Gillespie had dreads back then. He does not have dreads in court now, but at the time of his arrest, the photo depicts dreads.

A detective who was onsite when Gillespie was arrested was asked to identify Gillespie in the courtroom. The detective did so, describing the outfit Gillespie was wearing. The State then asked, "Does he appear to be the same today as he was when you saw him back on [the arrest date of] February 24th?" To which the detective replied, 'No. . . . On that day he had longer hair. His hair was in twists or braids style."

The photograph was relevant because it was admitted to identify Gillespie, based on the witness testimony as outlined above, and to show how his appearance had changed since his arrest as evidenced by the officer's testimony. "A determination by the jury of whether or not [Gillespie] met this description thus was crucial to the [S]state's proof. The photograph was admissible for that purpose." (Citation omitted.) *Duckworth v. State*, 246 Ga. 631, 635 (6) (272 SE2d 332) (1980) (where witnesses testified as to defendant's appearance, admission of "mugshot" taken at time of arrest was admissible).

Gillespie contends that the photograph was prejudicial because no testimony indicated whether it was taken at the arrest in the instant case or a prior arrest. The photograph in the record before us is undated. As noted above in Division (1) (b), where, as here, the jury would not know from the testimony whether the photograph was from the instant offense or a prior offense, and the photograph did not indicate that Gillespie was guilty of any prior crimes, there was no abuse of discretion in its admission. *Clark*, supra at 185 (3). See also *Mobley*, supra. Compare *Roundtree*, supra.

(c) Gillespie argues that the trial court erred in allowing the State to introduce evidence of the circumstances of his arrest, specifically, that marijuana was located near his person when he was arrested. He contends that the marijuana was not connected to the crimes at issue and that the arrest was too remote in time to be sufficiently related to the offenses charged.

The crimes at issue occurred on February 16, 2010. Gillespie was arrested eight or nine days later, on February 24 or 25, 2010,[4] when he was found hiding in a water heater closet at a different location from the scene of the crime. Police found 58.5

---

[4] The record contains conflicting information as to Gillespie's date of arrest. Police involved in the arrest testified that it occurred on February 24, 2010, but the arrest/booking report and affidavit for arrest are dated February 25, 2010.

grams of marijuana in the closet where he had been hiding. In admitting the marijuana into evidence, over objection, the trial court found that the discovery of the marijuana was relevant to the crimes. We agree.

In general, the circumstances connected with a defendant's arrest are admissible, even if such circumstances incidentally place the defendant's character in issue. *Benford v. State*, 272 Ga. 348, 350 (3), n. 2 (528 SE2d 795) (2000). The evidence still must be shown to be relevant, and circumstances connected with a defendant's arrest are not automatically relevant. Id. at 350 (3).

> Rather, such evidence is subject to the same standard of relevancy and materiality applicable to other evidence. Thus, the admission or exclusion of this evidence lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.

(Citation and punctuation omitted.) Id.

As Gillespie points out in his appellate brief, he was charged with theft of money, not marijuana. However, in a case where the defendant was on trial for rape and aggravated sodomy, this Court held that evidence of his possession of a misdemeanor amount of marijuana at the time of his arrest was admissible. *Burdette v. State*, 197 Ga. App. 881, 881 (3) (399 SE2d 745) (1990). "The mere fact that the

17

evidence may have incidentally implicated defendant in the commission of an unrelated crime does not render the evidence inadmissible." (Citation omitted.) Id.

Here, while the marijuana was not found on Gillespie's person, but rather in the small closet where he was hiding, the marijuana bore a logical relation to his arrest in that the crimes at issue arose out of a plan to steal marijuana by first pretending to want to buy it from an unwitting seller. *Hanes v. State*, 294 Ga. 521, 522 (1) and 524 (3) (755 SE2d 151) (2014) (ammunition and pistol similar to murder weapon that were "found within [defendant's] reach" at time of arrest were admissible); *Roker v. State*, 262 Ga. 220, 221 (1), n. 2 and 222 (6) (416 SE2d 281) (1992) (in shooting crime involving an unidentified .45 caliber pistol and a Glock 9mm pistol, evidence that an automatic weapon, not identified by the Court as one involved in the crime, was found near closet where defendant was hiding was admissible as a circumstance of arrest). Further, there was testimony that "a pound" of marijuana was stolen and divided between the robbers, including Gillespie. Marijuana played a role in the events leading to the crimes, and the evidence in the instant case was relevant. *Benford*, supra (finding no error in admission of testimony that crack cocaine was found in defendant's possession at time of arrest where crack cocaine played a role in the events leading up to a murder and where the jury could draw a reasonable

inference that defendant's motive in murdering the victim was to obtain the victim's drugs or money to purchase the drugs from others).

Further, the lapse of eight or nine days between the crime and Gillespie's arrest with the marijuana nearby does not render the incident so remote in time that admissibility is barred. *Manuel v. State*, 315 Ga. App. 632, 633 (1) (727 SE2d 246) (2012) (gun which was not used in the crime and was in defendant's possession during arrest 19 days after shooting was not too remote in time to be admissible); *Nealy v. State*, 246 Ga. App. 752, 752-753 (1) (542 SE2d 521) (2000) (admission of bulletproof vest worn by defendant at time of arrest, where crime involved a shootout 26 days earlier, not too remote in time).

Finally, even if the trial court's action could be deemed erroneous, any error was harmless given the overwhelming evidence of Gillespie's guilt. *Benford*, supra at 350 (3).

(d) Gillespie contends that the trial court erred in denying his motion for a mistrial after the State introduced a videotaped statement in which Gresham, a co-defendant who pled guilty, told a police officer that Gillespie sold "weed." The trial court denied the motion for mistrial, but gave a limiting instruction to the jury.

During the taped interview, Gresham told the police officer that he was setting up a ride to go get marijuana. Gillespie, who is also known as "Mon," was with him. "Mon, he sell weed, too. Usually Mon have weed," Gresham told the officer, explaining that when he asked Gillespie, "Do you want some more weed?" Gillespie "was like, 'Yeah, I need to get me some, too.'" At trial, Gillespie's counsel agreed that the portion of the videotape in which Gresham states that Gillespie said he also wanted marijuana was admissible, but took issue with the statement that his client sold marijuana.

Under OCGA § 24-2-2, which was in effect at the time of Gillespie's trial,[5] "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." The admission or exclusion of such evidence is within the trial court's sound discretion, which we will not disturb absent clear abuse. *Benford*, supra at 350 (3).

Our Supreme Court has determined that even if motive is not essential to proving the crimes charged, "the State is entitled to present evidence to establish that

---

[5] OCGA § 24-2-2 was repealed by Laws 2011, Act 52, § 2, effective January 1, 2013, when Georgia's new evidence code went into effect.

20

there was a motive, and evidence that [Gillespie at times sold or possessed drugs] is relevant to prove that he had a motive for committing the crimes and is not rendered inadmissible by the fact that it incidentally puts his character in issue." (Citations omitted.) *Thornton v. State*, 292 Ga. 87, 88-89 (3) (734 SE2d 393) (2012). Here, evidence that Gillespie used and sold marijuana was properly admitted, "given the role that drugs . . . played in the events leading up to the crimes and the reasonable inference that the jury could have drawn from the evidence that [Gillespie's] motive in [robbing] the victims was to obtain . . . drugs or [their] money[.]" *Bryant v. State*, 288 Ga. 876, 889 (10) (a) (708 SE2d 362) (2011) (evidence that defendant used and dealt drugs properly admitted to show his motive to murder victims in order to obtain drugs or money for a drug transaction). We find no error.

*Judgment vacated and case remanded in Case No. A15A0146, and judgment reversed and case remanded in Case No. A15A0149. McMillian, J., concurs. Barnes, P. J., concurs in judgment only.*