**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 23, 2018**

# In the Court of Appeals of Georgia

A18A1198. CROFT v. THE STATE.                                    GS-040C

GOSS, Judge.

On appeal from his conviction for child molestation, aggravated sexual battery and other crimes, Marty Croft argues that his right to be present during a critical stage of the proceedings was violated and that the trial court erred when it charged the jury on a child's incapacity to consent to aggravated sexual battery. Croft also argues that trial counsel was ineffective. Because the trial court erred in its jury instruction on aggravated sexual battery, we reverse Croft's conviction on that single count, upon which he may be retried, but we affirm the remainder of the trial court's judgment.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165)

(2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the jury's verdict, the record shows that in 2011, when the victim was 15 years old, she was visiting her uncle Croft, who lived near her and her parents, when Croft removed her shirt and pants and touched her private area. After the victim slapped him, Croft urged her not to tell anyone about the incident. On the victim's subsequent visits to his house, Croft continued to molest her, kissing her neck, breasts, stomach, and back even though she told him to stop, and threatened to have her father sent to prison if she told anyone about the contact. On other occasions, Croft forced the victim to touch his penis; penetrated her vagina with his fingers; and dragged her by the wrists into a bedroom, where he touched her vaginal and rectal area with his hands and penis. On another occasion in May 2013, after the victim had turned age 17, Croft touched her private area through her clothes and tried to remove her pants, after which the victim went into the bathroom and locked the door.

In January 2014, after watching a television program on child molestation, the victim made an outcry to her mother. The victim's father then called police, who arranged for a forensic interview. Croft was arrested on January 24, 2014. In March 2014, Croft was indicted on three counts of child molestation and one count each of aggravated sexual battery, enticing a child for indecent purposes, aggravated assault (with intent to rape), false imprisonment, and sexual battery. At trial, Croft denied having any sexual contact with the victim. After a jury found Croft guilty on all counts, he was convicted and sentenced to life plus 40 years with the first 35 years to serve in prison.[1] Croft's motion for new trial was denied, and this appeal followed.

1. Although Croft has not asserted that the evidence against him was insufficient, we have reviewed the record, and conclude that the evidence was indeed sufficient to sustain his conviction on all counts. See OCGA §§ 16-6-4 (a) (defining child molestation), 16-6-22.2 (b) (defining aggravated sexual battery), 16-6-5 (a) (defining enticing a child for indecent purposes), 16-5-21 (a) (1) (defining aggravated

---

[1] Although the trial court totaled the sentence in the written sentence order as life plus 40 years with 35 years to serve in prison, the court appears to have imposed in the written sentence order a total sentence on the individual counts of life imprisonment plus 20 years with 30 years to serve. Given our reversal of the aggravated sexual battery count, which accounted for a principal part of the sentence, we leave recalculation of the sentence for the trial court on remand.

assault as assault with intent to rape), 16-5-41 (a) (defining false imprisonment), 16-6-22.1 (b) (defining sexual battery); *McGhee v. State*, 263 Ga. App. 762, 763 (1) (589 SE2d 333) (2003) (victim's testimony was sufficient, standing alone, to sustain conviction for crimes including child molestation and aggravated sexual battery); *Jackson*, supra.

2. Croft first asserts that his constitutional right to be present during all critical stages of the proceedings against him was violated when the trial court conducted a conversation with a juror off the record. We disagree.

> Embodied within the constitutional right to the courts[] is a criminal defendant's right to be present and see and hear, all the proceedings which are had against him on the trial before the Court. . . . [P]roceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present. . . . Notwithstanding, the right to be present belongs to the defendant and the defendant is free to relinquish that right if he or she so chooses.

(Citations and punctuation omitted.) *Ward v. State*, 288 Ga. 641, 645 (4) (706 SE2d 430) (2011). The right to be present at a particular critical stage is waived "if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver."

4

(Footnote omitted.) *Hampton v. State*, 282 Ga. 490, 492 (2) (a) (651 SE2d 698) (2007).

The record shows that voir dire was conducted "off the record by direction of the Court." When counsel for both sides were asked whether they had any objection to this procedure, both responded that they did not. Later in the trial, after the evidence had been closed, juror 18 indicated to the bailiff that he was "uncomfortable about going forward." After the jury was excused, the trial court brought the juror into the courtroom in the presence of both counsel and discussed how to address the problem, including making the juror an alternate. The juror then returned to the jury room, where deliberations continued until the jury was excused for the evening. On the following morning, after bringing the jury in and reading the charge, the trial court suggested that the juror be questioned, to which both sides agreed, with no contradiction from Croft himself. After a brief discussion on the record, the juror agreed to continue, and the trial court asked him to "resume [his] position in the jury room[,]" to which both sides again agreed, without contradiction from Croft himself.

At the second hearing on Croft's motion for new trial, Croft introduced a letter from juror 18 to the effect that as a result of the death of a family friend, the juror was in deliberations when he realized that he was "not comfortable with being a juror that

week." According to the letter, the juror notified the bailiff, who escorted the juror into the courtroom, where counsel for both sides were present and the trial court, after questioning him, "politely told [him] that . . . [he] needed to stay on this jury." The juror was then escorted back into the jury room until deliberations ended for the day. On the following morning, again with counsel present, the juror agreed to serve. The letter also stated that the juror had "no other one[-]on[-]one contact or conversations with the [j]udge about any part of this case or [his] ability to perform [his] duties as a juror[.]" Croft's counsel also testified at the hearing that Croft never indicated a desire to be absent from any part of the proceedings. In the order denying the motion for new trial, the court held that the record showed that Croft was present at the time in dispute, that any suggestion to the contrary was not credible, and that counsel "clearly agreed to let[] the juror sit . . . in the presence of the defendant."

Citing *Gillespie v. State*, 333 Ga. App. 565 (774 SE2d 255) (2015), Croft argues that in the absence of any evidence that he was present at an "off-the-record communication" between the trial court and the juror, the State has not carried its burden of showing that he was indeed present. See id. at 572 (2) (a) (vacating conviction and remanding for further findings as to whether the State had carried its burden of showing that a defendant waived his right to be present). The record does

6

not support this contention. Rather, the juror's own account shows that after he expressed discomfort to the bailiff, the juror was brought into the courtroom to discuss the matter in the presence of the trial court and counsel. See *Jackson v. State*, 282 Ga. App. 612, 614-615 (639 SE2d 403) (2006) (affirming denial of motion for new trial when defendant had not shown that communications between bailiff and jury foreman were improper). There is no evidence that Croft was absent during any of the courtroom exchanges that followed, and the trial court explicitly disbelieved any suggestion that Croft was not present[2] and concluded that counsel had agreed, in Croft's presence, to let the juror sit. This record thus authorizes the conclusion that counsel for Croft was present at all stages of the discussion with the juror, that his counsel explicitly approved of the trial court's procedures, and that Croft acquiesced in counsel's actions such that any objection to the trial court's handling of the matter was waived. See *Hampton*, 282 Ga. at 492 (2) (a) (a defendant waived his right to be present at a juror interview by means including "the representations of his trial counsel made in open court while he was present"). Compare *Ward*, 288 Ga. at 645-

---

[2] Croft's appellate brief does not cite to his apparent testimony after the fact, disbelieved by the trial court, that he was not present at a critical stage of the proceedings.

7

646 (4) (trial court's ex parte removal of juror following closing arguments and outside the presence of defendants was reversible error warranting a new trial).

3. Croft also argues that the trial court erred in its charge to the jury on a child's incapacity to consent to aggravated sexual battery. We agree and reverse Croft's conviction on this count, on which he may be retried.

The indictment charged Croft with penetrating the victim's vagina with his finger at some point between January 1 and December 31, 2011, without her consent. The record shows that the trial court charged the jury as follows as to this offense:

> Count two, a person commits the offense of aggravated sexual battery when that person intentionally penetrates with a foreign object the sexual organ of another person without consent of that person. . . .
>
> [L]ack of consent on the part of the alleged victim is an essential element of the crimes of aggravated sexual battery [and] sexual battery[.] . . . [T]he burden of proof is on the State to show a lack of consent on the part of the alleged female victim beyond a reasonable doubt. Consent induced by force, fear, or injury is not valid consent and will not be a defense as to any of these offenses, should you so find. *A child under the age of 16 is incapable of consenting as a matter of law*.

(Emphasis supplied.) Because Croft did not object to this or any other portion of the charge, we review this enumeration only for plain error. See *Aguilar v. State*, 340 Ga.

8

App. 522, 523 (1) (798 SE2d 60) (2017) (applying plain- error analysis to an unobjected-to jury instruction that a victim's lack of consent is presumed when the victim is under the age of 16); *State v. Crist*, 341 Ga. App. 411, 414-415 (801 SE2d 545) (2017) (same).

"Viewing the jury charges as a whole under the plain error standard, the correct inquiry is whether the instruction at issue was erroneous, whether it was obviously so, and whether the charge likely affected the outcome of the proceeding." (Punctuation and footnote omitted.) *Aguilar*, 340 Ga. App. at 523 (1).

> "First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."

*Crist*, 341 Ga. App. at 414, quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (other citations omitted). The Supreme Court of Georgia has recently

9

held that the question whether an error is considered "clear or obvious" under the second prong of the plain-error test "is judged under the law existing *at the time of appeal*, regardless of whether the asserted error in the trial court was plainly incorrect at the time of trial, *plainly correct at the time of trial,* or an unsettled issue at the time of trial." (Emphasis omitted and supplied.) *Lyman v. State*, 301 Ga. 312, 318 (1) (800 SE2d 333) (2017).

When the instruction in the January 2015 trial at issue here noted that a child under the age of 16 could not consent to sexual battery, it was correct under the law at that time. See, e.g., *Haynes v. State*, 302 Ga. App. 296, 302 (3), n. 4 (690 SE2d 925) (2010); *Engle v. State*, 290 Ga. App. 396, 398 (2) (659 SE2d 795) (2008) (approving a jury instruction suggesting that an underage victim is not capable of consenting to the contact constituting sexual battery). In September 2015, however, our Supreme Court issued its decision in *Watson v. State*, 297 Ga. 718 (777 SE2d 677) (2015), which held that OCGA § 16-6-22.1 (d), the sexual battery statute, "require[s] actual proof of the victim's lack of consent, regardless of the victim's age," and overruled cases including *Haynes* and *Engle*. *Watson*, 297 Ga. at 720-721 (2). As of this appeal, then, and although the portion of the jury charge suggesting that the victim was incapable during that time of consenting to Croft's penetration of

10

her vagina with his finger was correct as of the time of the trial at issue, that portion of the charge nonetheless amounted to "clear or obvious error" under the second prong of the plain-error test. *Lyman*, 308 Ga. at 318.

Since our Supreme Court's decision in *Watson*, this Court has reversed four convictions for sexual battery on the ground that the trial court's instructions erroneously took away the issue of a child victim's lack of consent from the jury. See *Laster v. State*, 340 Ga. App. 96, 99 (796 SE2d 484) (2017) (reversing conviction when the appellate court could not conclude that it was "highly probable that the error did not contribute to the jury's verdict," citing *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Aguilar*, 340 Ga. App. at 524 (reversing conviction when a trial court plainly erred in giving an instruction that "wholly failed to charge the essential element of" lack of consent); *Duncan v. State*, 342 Ga. App. 530, 541 (6) (804 SE2d 156) (2017) (reversing conviction when an instruction "effectively relieved the State of its burden to prove [consent as] an essential element of the crime" of aggravated sexual battery and was therefore not harmless); *Williams v. State*, — Ga. App. — (2) (815 SE2d 590) (2018) (same, quoting and following *Duncan*). In two other cases, we have found no reversible error because the charge, when taken as a whole, corrected any false impression that lack of consent was irrelevant. See *Crist*, 341 Ga.

11

App. at 548-549 (even though a trial court's oral instruction omitted the elements of sexual battery, the written charge was correct in light of the indictment, which required proof of a child's lack of consent, as well as the remainder of the charge); *King v. State*, — Ga. App. — (3) (816 SE2d 390) (2018) (even though a trial court's oral instruction stated that a child was "unable to consent" to intercourse, a reinstruction and the remainder of the charge properly "required the State to prove lack of consent and made no mention of an underage victim's inability to consent to sexual conduct").

Here, the trial court's instruction first stated that "lack of consent on the part of the alleged victim is an essential element of the crimes of aggravated sexual battery [and] sexual battery" and then that "*[a] child under the age of 16 is incapable of consenting as a matter of law*." (Emphasis supplied.) "[W]hen a given instruction fails to provide the jury with the proper guidelines for determining guilt or innocence, it is clearly harmful and erroneous as a matter of law." *Chase v. State*, 277 Ga. 636, 639 (2) (592 SE2d 656) (2004). Because this instruction "effectively relieved the State of its burden to prove [lack of consent as] an essential element of the crime" of aggravated sexual battery, we must conclude that the error affected Croft's substantial rights and seriously affected the fairness of the proceedings below such that his

12

conviction on this count must be reversed. See *Watson*, 298 Ga. at 721; *Cheddersingh v. State*, 290 Ga. 680, 683 (724 SE2d 366) (2012) (verdict form that directed jury to find defendant not guilty beyond a reasonable doubt affected defendant's substantial rights and amounted to plain error); *Aguilar*, 340 Ga. App. at 524 (reversing conviction when a trial court plainly erred in giving an instruction that "wholly failed to charge the essential element of" lack of consent); *Barnes v. State*, 335 Ga. App. 709, 714 (1) (782 SE2d 811) (2016) (error in omitting an instruction that a jury should not draw any inference from a defendant's failure to testify affected his substantial rights and was plain error).

In light of our holding in Division 1, however, which concludes that the evidence was sufficient to sustain Croft's conviction on all of the counts with which he was charged, Croft may be retried on the charge of aggravated sexual battery, "this time using the correct jury instructions," without running afoul of the Double Jeopardy Clause. See *Watson*, 297 Ga. at 721 (Nahmias, J., concurring) (noting that in light of counsel's concession at oral argument that the evidence was sufficient, the defendant could be retried as to the reversed sexual battery counts).

4. Croft also asserts that trial counsel was ineffective when he failed to impeach the victim with other witnesses' testimony as to her untruthfulness. We disagree.

13

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). As to deficient performance, "every effort must be made to eliminate the distorting effects of hindsight[,]" and the trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" (Citation and punctuation omitted.) *White v. State*, 265 Ga. 22, 23 (2) (453 SE2d 6) (1995). As to prejudice, a defendant need only show "a reasonable probability of a different outcome" due to trial counsel's deficient performance. (Punctuation and footnote omitted.) *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008). Finally, the question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

This record shows that at the hearing on Croft's motion for new trial, Croft produced six witnesses, either relatives or longstanding acquaintances of the victim, all of whom testified that they would have testified at trial on the subject of the

14

victim's reputation for untruthfulness had trial counsel asked them to do so. See OCGA § 24-6-608 (a) (1) ("The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation" as to "character . . . for untruthfulness"). On direct examination, trial counsel suggested that he did not introduce further evidence on this subject because it was already before the jury and because he did not want to draw additional adverse rulings from the trial court. Counsel also testified, however, that he could not explain many of his tactical decisions in the case. In the order denying the motion, the trial court indicated that it did not credit counsel's lack of explanation for his failure to impeach the victim further, noted that it would be "speculative" to conclude that "[this] omission by the defense" was deficient performance, and concluded that counsel had made a reasonable strategic decision not to attack the victim in this way.

"Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citations and punctuation omitted.) *Brown v. State*, 321 Ga. App. 765, 767 (1) (743 SE2d 452) (2013). Specifically, "the determination as to which defense witnesses will be called is purely a matter of trial strategy and tactics, and trial strategy and tactics

15

do not equate with ineffective assistance of counsel." (Punctuation and footnote omitted.) *Howard v. State*, 340 Ga. App. 133, 141 (3) (a) (796 SE2d 757) (2017). In light of this trial counsel's extensive experience, moreover, "[w]hether counsel's assessment of his performance was an honest admission of incompetency or a disingenuous attempt to secure a new trial for his former client is not for our determination." *Carrie v. State*, 298 Ga. App. 55, 62 (5), n.23 (679 SE2d 30) (2009), citing *Nejad v. State*, 296 Ga. App. 163, 169-170 (674 SE2d 60) (2009) (Smith, P.J., concurring fully and specially); see also *State v. Nejad*, 286 Ga. 695 (690 SE2d 846) (2010) (reversing Court of Appeals's determination that trial counsel had been ineffective in failing to adequately explain a defendant's right to testify).

Because counsel's decision not to attack the victim's character to this extent or in this way was an objectively reasonable one, and because the trial court's judgment that counsel was not ineffective in this regard was supported by some evidence, not clearly erroneous, and correct as a matter of law, we affirm the denial of the motion for new trial on this ground. *Howard*, 340 Ga. App. at 141 (3) (a) (counsel's decision not to call a particular witness was a reasonable trial strategy and not ineffective); *Hughley v. State*, 330 Ga. App. 786, 792 (3) (a) (769 SE2d 537)

(2015) (counsel's decision not to attack a victim's credibility while she was "upset" was a reasonable trial strategy and not ineffective).

In sum, we affirm Croft's conviction for three counts of child molestation, and one count each of enticing a child for indecent purposes, aggravated assault, false imprisonment, and sexual battery, but we reverse Croft's conviction for aggravated sexual battery and remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Miller, P. J., and Brown, J., concur.*