FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

September 24, 2014

# In the Court of Appeals of Georgia

A14A0897. BAGWELL v. THE STATE.

PHIPPS, Chief Judge.

Howard Bagwell was charged with committing 22 sexual offenses against his minor granddaughter, K. B., during the several years she lived in his home. Convicted on all counts, Bagwell filed a motion for new trial. He argued, inter alia, that his right to be present at critical stages of the prosecution was violated when certain bench conferences were held and that his trial counsel rendered ineffective assistance. After a hearing, the trial court denied Bagwell's motion. In this direct appeal, Bagwell maintains that his constitutional rights were violated. We affirm.

At the jury trial, the state showed the following. In June 2003, eight-year-old K. B. began living with her paternal grandparents, Bagwell and his wife. Soon thereafter, K. B. testified, Bagwell began a course of sexual abuse, which included

oral sodomy of her vagina more often than once a month, digital penetration of her vagina more often than once a week, and sexual intercourse more often than once a week.

Within a year of K. B.'s moving into her grandparents' residence, in February 2004, the Division of Family and Children Services (DFCS) opened an investigation based on reports from K. B.'s school that K. B. was being sexually abused. K. B. had made such a disclosure to her playmate, who told her own mother; the mother then relayed K. B.'s allegations to personnel at the girls' school. DFCS conducted a forensic evaluation of K. B. on February 11. But during an interview, which was recorded and later played for the jury, K. B. made no disclosure of abuse. DFCS closed its investigation in March 2004.

At trial, K. B. explained that she had made no disclosure to DFCS (or to her grandmother ) at that time because she loved her grandmother and did not want to be separated from her. But as K. B. continued living with her grandparents, Bagwell continued sexually abusing her.

One such episode occurred in February 2007. Bagwell came into K. B.'s bedroom, put his hand inside her pants and underwear, and digitally penetrated her. After Bagwell left the residence, because she wanted the abuse to end, K. B. told her

2

grandmother that Bagwell had hurt her. When her grandmother confronted Bagwell by asking what he had done to K. B., he responded, "[S]omething I shouldn't have." K. B.'s grandmother immediately sent K. B. to live with her (K. B.'s) father.

About a week later, on February 20, 2007, K. B. told her school counselor that "something very bad" had happened between her and her grandfather and that her grandmother had sent her to live with her father. K. B. explained at trial that she had confided in the counselor because she had determined that her family did not believe her, as they had done nothing but send her to live with her father. The counselor notified DFCS.

That same day, DFCS placed K. B. in protective custody and contacted an investigator with the sheriff's office. The next day, K. B. disclosed in a forensic interview that Bagwell had sexually abused her about a week before.

Bagwell was arrested. During a police interview on February 22, 2007, Bagwell insisted, "I don't care what anybody says. I didn't have sex with that girl." Bagwell admitted, however, going into K. B.'s bedroom on February 14 and 15, 2007 and rubbing K. B.'s breasts and vagina, both on top of and underneath her clothes. When asked why he had done that to K. B., Bagwell answered that K. B. had always

3

been flirting with him and "coming on" to him, so he had discerned that that was what she wanted. Bagwell expressed, however, that what he had done was wrong.

On February 12, 2009, K. B. submitted to another forensic interview, because she had begun disclosing additional instances of Bagwell's abuse. During that interview, K. B. told of incidents of sexual abuse perpetrated by Bagwell before February 14, 2007.

The jury found Bagwell guilty of the 22 charged offenses, alleged to have occurred between September 1, 2003 and December 31, 2007: seven counts of aggravated sexual battery, five counts of aggravated child molestation, five counts of rape, and five counts of child molestation.

1. Bagwell claims that holding nine bench conferences in his absence violated his constitutional "right to be present, and see and hear, all the proceedings which [we]re had against him on the trial before the [c]ourt."[1] We disagree.

Concerning a defendant's absence from bench conferences, the Supreme Court of Georgia espoused recently in *Heywood v. State*,[2]

---

[1] *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998) (citation and emphasis omitted).

[2] 292 Ga. 771 (743 SE2d 12) (2013).

Bench conferences, or sidebars, are a common occurrence during jury trials, allowing the attorneys for the parties to discuss matters with the judge without being heard by the jury and without the delays inherent in excusing the jurors from the courtroom and bringing them back in. Most bench conferences involve questions of law and consist of essentially legal argument about which the defendant presumably has no knowledge, and many other bench conferences involve logistical and procedural matters. A defendant's presence at bench conferences dealing with such topics bears no relation, reasonably substantial, to the fullness of his opportunity to defend against the charge, and the constitutional right to be present does not extend to situations where the defendant's presence would be useless, or the benefit but a shadow. Thus, a defendant's right to be present is not violated by his absence from such bench conferences.[3]

The *Heywood* Court further reiterated that a defendant's right to be present is not violated where there is waiver, explaining:

A defendant may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant. But in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him.[4]

---

[3] Id. at 774 (3) (citations and punctuation omitted).

[4] Id. at 775 (3) (citation omitted) (citing *Ward v. State*, 288 Ga. 641, 646 (706 SE2d 430) (2011), for the proposition that "acquiescence means a tacit consent to acts

The foregoing principles govern this contention to an outcome adverse to Bagwell.

Two of the nine bench conferences, as Bagwell readily concedes in his brief, "dealt with taking breaks." Conducting such bench conferences in Bagwell's absence did not violate his constitutional right to be present.[5]

A third bench conference was not transcribed. And as Bagwell acknowledges in his appellate brief, "[t]his means we have no clear understanding as to what specifically was discussed and how it may have impacted Appellant's rights." Bagwell, consequently, has not shown that his right to be present was violated.[6]

---

or conditions, and implies a knowledge of those things which are acquiesced in") (punctuation omitted).

[5] See *Heywood*, supra at 774 (3); *Smith v. State*, 319 Ga. App. 590, 596 (6) (737 SE2d 700) (2013) (rejecting the defendant's claim that his right to be present was violated where the challenged sidebars involved only "housekeeping matters").

[6] See *Huff v. State*, 274 Ga. 110, 111-112 (2) (549 SE2d 370) (2001) (reasoning that "mere speculation" about what was discussed during a bench conference shows no harm and thus could not serve as a basis for the grant of a new trial); *Lopez v. State*, 326 Ga. App. 770, 776 (6) (757 SE2d 436) (2014) ("[Appellant] has not shown what subjects were discussed at the bench conferences that occurred outside of his presence; therefore, he has not shown any meaningful relationship between his presence or absence at the conferences and his opportunity to defend against the charges against him."); *Cunningham v. State*, 240 Ga. App. 92, 96 (2) (522 SE2d 684) (1999) (concluding that appellant waived issue concerning substance of bench conference, where bench conference was not transcribed for the record).

6

In three other bench conferences, the trial court heard legal argument concerning whether to hold a *Jackson-Denno* hearing and whether certain other evidence was admissible. Because these bench conferences involved questions of law and consisted of essentially legal argument about which Bagwell presumably had no knowledge, his right to be present was not violated.[7]

The three remaining bench conferences concerned procedural and logistical matters relating to striking a jury. Pretermitting whether Bagwell was entitled to be present,[8] we find no reversible error in the trial court's conclusion that Bagwell showed no entitlement to a new trial based on his absence therefrom.

---

[7] See *Heywood*, supra; *Parks v. State*, 275 Ga. 320, 324-325 (3) (565 SE2d 447) (2002) (concluding that the defendant's right to be present was not violated by his absence from bench conferences on the admissibility of testimony and other evidence, the merits of objections regarding trial procedures, the content of a limiting instruction, the scheduling of a witness's testimony, and the prosecutor's request for a 15-minute delay in the trial); *Huff*, supra (holding that the defendant's right to be present was not violated by his absence from a jury charge conference and an in-chambers conference discussing whether the defendant's custodial statement should go out with the jury).

[8] Compare, e.g., *Heywood*, supra (holding that appellant's right to be present was not violated by holding in his absence bench conferences that concerned "only legal arguments regarding objections and proper trial procedure or logistical matters"), with *Sammons v. State*, 279 Ga. 386, 387 (2) (612 SE2d 785) (2005) ("Proceedings at which the jury composition is selected or changed are a critical stage at which the defendant is entitled to be present.").

Bagwell's trial lawyer testified at the motion for new trial hearing that he typically did not invite defendants to bench conferences, routinely opting to inform his clients about the discussions upon returning to the defense table. And the trial transcript indicates that, during these three conferences, as well as during the other six, Bagwell was in the courtroom; Bagwell has made no assertion otherwise.[9] "Appellant's failure to voice any objection to his absence from th[e] bench conference[s], either directly or through counsel, constituted acquiescence in his counsel's waiver of his right to be present."[10]

---

[9] See generally *Milinavicius v. State*, 290 Ga. 374, 377 (3) (721 SE2d 843) (2012) (noting that the record did not mention the exact moment appellant entered the courtroom between the time the court ordered him to be brought into the courtroom and the time the recess was concluded, but determining that the absence of that information did not prove appellant was not in the courtroom at the time certain discussions were had; applying, therefore, "the presumption of regularity" to conclude that appellant was inside the courtroom when necessary).

[10] *Heywood*, supra at 774-775 (3) (concluding that the appellant waived his right to be present at a bench conference that discussed whether to replace prospective jurors, where the trial judge advised those in the courtroom, including appellant, about the topic of the bench conference, and appellant failed to voice any objection to his absence from this bench conference – either directly or through counsel); *Kennedy v. State*, 274 Ga. 396, 397 (3) (554 SE2d 178) (2001) ("[B]ecause all of the bench conferences in question took place while [the defendant] was in the courtroom, and she voiced no objection to them, she has waived appellate review of the alleged improper conferences.") (footnote omitted); *Lopez*, supra; *Young v. State*, __ Ga. App. ___, ___ (2) (__ SE2d __) (2014) (finding that appellant waived appellate review of alleged improper bench conferences during voir dire, where defense

2. Bagwell contends that the trial court erred by denying his claim of ineffective assistance of trial counsel.

> In order to prevail on such a claim, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. . . . If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the court.[11]

An appellate court accepts the trial court's factual findings and credibility determinations unless clearly erroneous, but independently applies the legal principles to the facts.[12]

(a) Bagwell complains that his trial lawyer did not request a continuance to review subpoenaed materials that the lawyer received from the state on the morning

---

counsel testified at the motion for new trial hearing that defense counsel was present for all of the conferences, that each conference happened while the defendant was seated at counsel's table, and that counsel told defendant what was happening; where both defendant and his counsel were present in the courtroom during the entire voir dire process, yet neither counsel nor defendant had objected) (Case No. A14A0096, decided July 7, 2014).

[11] *Crowder v. State*, 294 Ga. 167, 169 (3) (751 SE2d 334) (2013) (citations and punctuation omitted); see *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[12] *Colzie v. State*, 289 Ga. 120, 124 (3) (710 SE2d 115) (2011).

of trial. Purportedly, these were training materials that had been used by the individual who conducted the forensic interview of K. B. in 2007. Bagwell's post-conviction lawyer argued at the motion for new trial hearing that "[Bagwell's trial lawyer] should've asked for a continuance to give himself the opportunity to get up to speed and perform an appropriate and thorough cross-examination" of that witness.

Bagwell's trial lawyer testified at the motion for new trial hearing that, although he had not received the materials until shortly before trial, he had not then believed that he needed a continuance. The lawyer recounted that he was already familiar with that forensic interviewer because, prior to Bagwell's trial, he had been defense counsel in one or two trials in which she had testified for the state as an expert and he had then cross-examined her. The lawyer testified that he had thus already prepared for cross-examining her in the instant case.

Bagwell's complaint is unavailing. At the motion for new trial hearing, Bagwell made only a vague claim that his trial lawyer would have been better prepared had he been granted a continuance, and he cited nothing in the materials nor showed how any part(s) thereof might have been helpful to the defense. Pretermitting

10

whether it constituted deficient performance to fail to request a continuance, we conclude that Bagwell failed to show any prejudice.[13]

(b) Bagwell complains that his trial counsel failed to call in his defense three individuals. "The decisions on which witnesses to call, whether and how to conduct cross examinations, . . . and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client."[14]

Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of

---

[13] See *Grell v. State*, 291 Ga. 615, 620 (4) (b) (732 SE2d 741) (2012) (pretermitting whether failure to request continuance constituted deficient performance, and ruling that appellant failed to demonstrate prejudice); *Simmons v. State*, 291 Ga. 664, 668 (5) (b) (732 SE2d 65) (2012) (determining that defendant failed to establish that he was prejudiced by his trial counsel's failure to show him all documents in his file prior to trial, where defendant merely speculated that he could have given his counsel input on his file, but did not indicate what that input would have been); *Walker v. State*, 288 Ga. 174, 180 (3) (b) (702 SE2d 415) (2010) (rejecting claim of ineffective assistance of counsel for failure to request a continuance to review evidence, where "[appellant] presented no evidence at the motion for new trial hearing to support his bald assertion that there was a reasonable probability that the outcome of the proceeding would have been different had [his trial counsel] sought a continuance"); *Wells v. State*, 281 Ga. 253, 255 (2) (a) (637 SE2d 8) (2006) (rejecting claim of ineffective assistance of counsel for failure to request a continuance to find exculpatory evidence, where defendant did not make any proffer to show that the evidence would have been relevant and favorable).

[14] *McDaniel v. State*, 279 Ga. 801, 803 (2) (c) (621 SE2d 424) (2005) (citation and punctuation omitted).

11

reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.[15]

(i) Bagwell asserts that his trial lawyer performed deficiently by failing to call two of his granddaughters – one girl was about a year younger than K. B., and the other girl was about four or five months younger than K. B. Both girls testified at the motion for new trial hearing that they were frequently at the Bagwells' home when K. B. was there, that they had observed K. B.'s interactions with Bagwell, that they had observed no questionable behavior by their grandfather, and that K. B. never appeared frightened of him.

At the motion for new trial hearing, Bagwell's trial attorney testified that he had interviewed each potential witness about whom Bagwell had told him. The lawyer did not recall, however, that Bagwell had identified either of those two granddaughters as having any testimony helpful to the defense.

Furthermore, as the lawyer pointed out at the hearing, the jury was presented similar testimony from other family members. One of Bagwell's daughters testified

---

[15] *Rivera v. State*, 295 Ga. 380, 384 (3) ( SE2d ) (2014) (citations omitted).

12

at the trial that she was frequently at her parents' home when K. B. was there, that K. B. never appeared afraid of Bagwell, that K. B. never acted unusual around him, that K. B. never indicated that anything inappropriate was going on, and that K. B. seemed happy. Bagwell's other daughter likewise described K. B. and Bagwell's interactions: "They got along fine. I mean, she adored her grandfather. She had him wrapped around her finger actually." And during cross-examination of Bagwell's wife (K. B.'s paternal grandmother), the defense lawyer elicited testimony that during the years K. B. lived with her and Bagwell, K. B. never indicated to her that she was afraid of Bagwell.

Because trial counsel's strategy in this regard cannot be regarded as one that no competent attorney would have followed,[16] Bagwell failed to demonstrate deficient performance by this claim.[17]

---

[16] See *Shaw v. State*, 292 Ga. 871, 875 (3) (a) (742 SE2d 707) (2013) (finding that the trial lawyer's explanation for not calling the children as witnesses – that the evidence they could provide could be elicited from other witnesses – was not unreasonable).

[17] See *McDaniel*, supra.

(ii) The third person whose testimony Bagwell claims his trial lawyer should have presented to the jury was the individual who conducted the forensic interview with K. B. in February 2004, during which K. B. made no disclosure of sexual abuse.

> At the motion for new trial hearing "[e]ither the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony." Here, [Bagwell] did not produce the witness to give testimony at the motion for new trial hearing or otherwise provide a legally recognized substitute as to what the witness would have testified at trial.[18]

As a result, when Bagwell's post-conviction lawyer was presenting closing argument on this issue, the trial judge interjected, "[Y]ou're not presenting what she would've testified to. . . [Y]ou're just speculating as to what she might've testified to; right?" The lawyer responded, "Yes sir."

---

[18] *Crowder*, supra at 169 (2) (quoting *Dickens v. State*, 280 Ga. 320, 322 (2) (627 SE2d 587) (2006)).

14

Mere speculation that the forensic interviewer could have added testimony helpful to his defense fails to demonstrate any prejudice.[19] Moreover, the jury was shown the recording of the February 2004 forensic interview.

Given these circumstances, Bagwell has shown no merit in his contention that the trial court erred by rejecting his claim of ineffective assistance of trial counsel.[20]

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur.*

---

[19] See *Crowder*, supra (rejecting appellant's argument that his trial counsel was ineffective for failing to call an expert witness, where appellant did not produce the witness to give testimony at the motion for new trial hearing or otherwise provide a legally recognized substitute as to what the witness would have testified at trial); *Brown v. State*, 293 Ga. 518, 519 (2) (748 SE2d 388) (2013) (rejecting appellant's argument that his trial counsel was ineffective for failing to locate and subpoena a certain individual to testify as a witness on his behalf at trial, citing the principle that "[s]peculation that [the individual] could have given testimony favorable to the defense does not establish prejudice") (citation omitted).

[20] See *Strickland*, supra; *Crowder*, supra at 169 (3).