**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A1007. LESTER v. THE STATE.

RICKMAN, Judge.

Marquis Lester was indicted for aggravated battery (OCGA § 16-5-24) and aggravated assault (OCGA § 16-5-21) for striking a woman in the face with a pool stick (also known as a pool cue), ultimately resulting in the loss of her eye. The jury found Lester guilty of aggravated assault and not guilty of aggravated battery. Lester appeals his conviction and the denial of his motion for new trial, contending that the trial court abused its discretion when it barred Lester's counsel from asking certain questions during voir dire, thereby denying Lester the opportunity to expose possible bias in the potential jurors, and that the trial court erred in denying Lester's motion to strike the venire after the State displayed demonstrative versions of a pool stick in the courtroom during voir dire. For reasons that follow, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence showed that on February 1, 2010, the victim (Lester's former girlfriend) went to a bar that Lester frequented regularly and saw Lester sitting at a table. As she walked past Lester on her way to the bar to buy a drink, he verbally insulted her. After she purchased a drink, she went outside and then returned to use the restroom. When she was headed toward the restroom, Lester continued to make insulting comments to her, while tossing a pool stick back and forth between his hands. The victim testified that "after the continuous taunts," she threw her drink in his face. She then remembers being hit in the head, and feeling excruciating pain, but could not remember further details. The victim was shown a video surveillance tape of the incident, which was published to the jury , and testified that the video shows she put her hand up in an attempt to block a pool stick that Lester used to hit her. After she had been struck, she bent over and Lester pushed her out of the way and walked out laughing, with the pool stick in his hand. An employee of the bar helped her up and gave her a towel for her face, which was bleeding profusely. The victim then went to the hospital. The injuries she sustained included

a split eyelid and a ruptured globe, and she ultimately lost her eye.[1] While she was at the hospital, the victim told police officers that Lester is the person who had caused her injuries. Lester contacted her after the incident and said that he was sorry and did not mean to do it. At trial, the victim identified Lester as the person who struck her in the face with a pool stick on February 1, 2010.

Lester testified at trial and admitted hitting the victim with the pool stick, but claimed that he was acting in self-defense. He testified that he was not trying to hurt her.

1. Lester contends that the trial court abused its discretion by refusing to let him ask potential jurors two questions – (1) Is there anyone here who believes that a woman cannot be the aggressor in an argument with a man? and (2) Is there anyone here who believes a man cannot defend himself from physical violence by a woman? He argues that the trial court's ruling denied him the opportunity to expose possible bias in potential jurors.

---

[1] The victim underwent surgery the night of the incident to put her eye back together, but she had no vision in the injured eye. She later underwent another surgery to remove her injured eye to avoid possible injury to the other eye. At that point, the victim had no use of her injured eye.

The limits a court may place on voir dire questions lie largely within the sound discretion of the court, and we will not interfere with the exercise of that discretion unless it is manifestly abused. *Ganas v. State*, 245 Ga. App. 645, 647 (2) (537 SE2d 758) (2000). OCGA § 15-12-133 delineates the proper scope of questions during jury selection and provides:

> . . . In all criminal cases, both the state and the accused shall have the right to an individual examination of each prospective juror from which the jury is to be selected prior to interposing a challenge. The examination shall be conducted after the administration of a preliminary oath to the panel or in criminal cases after the usual voir dire questions have been put by the court. In the examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the prospective juror.

"Voir dire should allow both parties an opportunity to ascertain the ability of the prospective jurors to decide the case on its merits, with objectivity and freedom

4

from bias and prior inclination." (Citation and punctuation omitted.) *Anderson v. State*, 236 Ga. App. 679, 682 (3) (513 SE2d 235) (1999). But no question should require a response from a juror that might amount to a prejudgment of the case. Id.

Lester argues that the questions permitted by the trial court were insufficient to expose bias in the potential jurors and that his questions should have been permitted because the subject matter of the action was an altercation between a man and a woman, and the man claimed self-defense. Thus, Lester's proposed questions sought juror's impressions of his defense in this case. This Court has previously held that the trial court did not abuse its discretion in refusing to allow questions designed to find jurors willing to accept a particular defense. See *Stewart v. State*, 262 Ga. App. 426, 427-428 (1) (585 SE2d 622) (2003) (trial court did not abuse its discretion in limiting defendant's voir dire questions regarding the jury's experience with self-defense); *Meeks v. State*, 216 Ga. App. 630, 632 (4) (455 SE2d 350) (1995) ("Meeks's proposed questions. . . sought not to ferret out bias or impartiality, but to find jurors amenable to the defense his lawyer would attempt to argue."); see also *Henderson v. State*, 251 Ga. 398, 400 (1) (306 SE2d 645) (1983) ("[q]uestions seeking to test the prospective jurors' willingness to accept defenses have been disallowed and upheld on appeal").

And this is not a case in which the trial court foreclosed all inquiry concerning the subject matter to which the questions were directed. The entire panel was asked the following: "Is there anyone here who has had to defend themselves or others from physical violence?"; "Has anyone been involved in a physical altercation with a member of the opposite sex?"; and "Has anyone witnessed a physical altercation between members of the opposite sex?" During individual voir dire, Lester's counsel was permitted to follow up on those questions and specifically asked numerous prospective jurors if the woman was the aggressor in the fights they had witnessed. After reviewing the record, we conclude that the thorough voir dire in this case was sufficient to ascertain the fairness and impartiality of the prospective jurors, and find no manifest abuse of discretion by the trial court. See *Sallie v. State*, 276 Ga. 506, 510 (3) (578 SE2d 444) (2003).

2. Lester contends that the trial court erred in denying his motion to strike the venire after the State displayed demonstrative versions of a pool stick in the courtroom during voir dire. He argues that the presence of the pool sticks constituted an improper influence on the jurors.

During voir dire, two of the potential jurors who answered affirmatively when asked if they had any prejudice or bias either for or against the accused mentioned the

6

presence of the pool sticks. When questioned individually, Juror 29 stated that he saw the two pool sticks and started to put a story together in his mind about how Lester had hit somebody with it. When asked if he recalled that the judge had read the indictment of the charges and stated that the State is alleging that Lester struck someone with a pool stick, Juror 29 said that he did. The prosecutor then asked if the statement from the judge would have gotten him to the same place even if he had not seen the pool sticks, and Juror 29 said "I believe so." Lester's counsel moved to strike Juror 29 for cause, and the trial court denied the motion. Lester's counsel then moved to strike the entire panel, arguing that the jurors had been tainted as far as what the evidence may be in this case. The trial court denied the motion.

Juror 36 was also questioned individually and stated that the combination of seeing the pool stick and hearing the information about the charges caused her to raise her hand when asked if her mind was perfectly impartial. She said that she is a visual person and has a weak stomach so "the whole pool stick to the eye really got me. . . ." When questioned by the defense, Juror 36 stated that her opinion was that "he probably did do that because you only have two witnesses and they named like eight, and they had doctors." Neither Juror 29 nor Juror 36 served on the jury.

To support his contention that the presence of the pool sticks was an improper influence on the jurors, Lester relies on *Bass v. State*, 285 Ga. 89 (674 SE2d 255) (2009). In *Bass*, the defendant claimed ineffective assistance when his trial counsel agreed to allow the county sheriff, who was the lead investigative officer and witness for the State, to serve as bailiff during Bass's trial. Id. at 89-90. The Supreme Court of Georgia recognized that even if the sheriff never discussed the case directly with any jurors, "it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout half of the trial between the jurors and this key witness for the prosecution." (Citation and punctuation omitted.) Id. at 92-93. The Court further stated that "the right to an impartial jury cannot be reconciled with a practice that, by permitting such witnesses to maintain during trial a custodial relationship with the jury, lends itself to the presence of influences extraneous to a proper determination of guilt or innocence." Id. at 94.

Lester argues that the presence of the pool sticks created an even stronger presumption that the jury was influenced than the sheriff's service as lead investigator and witness and bailiff in Bass's trial. We do not find *Bass* to be analogous or applicable here. This case is, however, similar to *Whitehead v. State*, 258 Ga. App. 271 (574 SE2d 351) (2002), in which the defendant complained that the trial court

8

had erred in denying his motion for mistrial based on the State's allegedly inflammatory display to the jury pool of numerous firearms owned by his wife, himself, and his family. Id. at 275 (2). This Court noted that there was "no evidence that a cache of weapons was openly brandished in the courtroom during voir dire or prior to trial," the one weapon that was visible to jurors before trial was moved before evidence was presented, and subsequent testimony showed that officers removed guns from Whitehead's residence and photographs of several of these firearms were shown to the jury. Id. This Court ultimately held that "physical evidence should not be viewed by the jury before the trial begins, but under the circumstances here we find no abuse of discretion on the part of the trial court in denying the motion for a mistrial." Id.

Here, the pool sticks were in the courtroom before voir dire began and, although Lester's counsel stated during her motion to strike the panel that she had an "immediate concern" when she saw them, no one objected to their presence. Before any jurors were questioned, the trial court read the indictment, which charged Lester with causing bodily harm to the victim by striking her in the face with a pool stick and depriving her of the use of her eye. Thus, the potential jurors were aware that a pool stick was involved in the crimes alleged to have been committed. And before

any evidence was presented, the pool sticks were removed from the courtroom. During the testimony of the owner of the bar where the incident occurred, one of the typical pool sticks used at his bar was admitted into evidence. Under the circumstances, we find no abuse of the trial court's discretion in denying Lester's motion to strike the entire jury panel. See *Whitehead*, 258 Ga. App. at 275 (2); see also *Jones v. State*, 240 Ga. App. 723 (1) (524 SE2d 773) (1999) ("The standard of appellate review for issues regarding jury panel dismissal is whether the trial court abused its discretion.").

*Judgment affirmed. Ellington, P. J., and Andrews, J., concur.*