**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 11, 2021**

# In the Court of Appeals of Georgia

A20A1675. GREEN v. THE STATE.

MARKLE, Judge.

Following a jury trial, Adrian Bassill Green, Sr. was convicted of rape (OCGA § 16-6-1 (a) (1)), incest (OCGA § 16-6-22 (a) (1)), and aggravated child molestation (OCGA § 16-6-4 (c)). He appeals from the trial court's denial of his motion for new trial, challenging the sufficiency of the evidence and contending (1) the trial court erred by (a) disallowing his proposed voir dire questions; (b) finding that he had waived his right to be present at bench conferences; (c) disallowing crime lab reports to go back with the jury during deliberations; (d) commenting on the victim's sexual history prior to sentencing; and (e) informing the jury of his prior statutory rape charge and failing to issue a timely limiting instruction; and (2) trial counsel rendered ineffective assistance by failing to (a) hire experts to assist in the investigation of the

case; (b) preserve his right to be present at bench conferences; and (c) object to testimony regarding the victim's sexual history. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that Green's then-fifteen-year-old biological daughter was sleeping at his house when he got into bed with her. Green forced her to kiss him, proceeded to remove both of their clothes, and then put his mouth on her vagina, put his penis in her mouth, and forced his penis inside her vagina although she resisted and told him it hurt. Afterward, Green told the victim to take a shower, which she did, and told her not to tell anyone because he would go to prison.

The victim texted her mother to pick her up. Once inside her mother's car, the victim disclosed that Green had raped her, and the mother called the police and took the victim to the hospital. The victim spoke to the police at the hospital, and her statement was consistent with the events recounted above. A nurse conducted a sexual assault examination, and collected swabs for DNA testing. A forensic interview was also conducted on the victim.[1]

---

[1] The forensic interview was recorded, admitted into evidence at trial, and played for the jury.

Thereafter, Green was arrested and charged with rape, incest, and aggravated child molestation. The police obtained buccal swabs from Green for DNA testing. And the State filed its notice of intent to present evidence of Green's prior statutory rape conviction under OCGA § 24-4-414.

At trial, the victim's testimony was consistent with her police statement. The nurse who conducted the sexual assault examination testified that the victim complained of vaginal pain on arrival, and the examination revealed that she had suffered a vaginal tear, which the nurse referred to as a "mounting injury" caused by the entry of a penis into the vagina. The nurse further testified that the victim disclosed that her boyfriend had digitally penetrated her a couple of days prior to the incident at issue here. And the therapist who conducted the forensic interview testified that the victim's responses were consistent with those of a child who had been sexually abused.

The forensic biologist who tested the swabs testified that the DNA obtained from the victim's vaginal cervical swab contained an allele that did not match the victim and had male DNA. Based on these results, the biologist recommended further testing. Additional testing showed that the DNA obtained from the victim's vaginal cervical swabs matched the haplotype of Green or any of his paternal male relatives,

and that this haplotype is not expected to occur more frequently than 1 out of every 2,083 in the African American male population or 1 out of every 2,488 male Caucasians.

Green testified and generally denied the accusations against him, claiming that the victim had fabricated them. Green admitted that he had previously pled guilty to the statutory rape of a fifteen-year-old.

The jury returned a guilty verdict on all counts. Green filed a motion for new trial, raising all the issues now raised on appeal. Following a hearing, the trial court denied the motion, and this appeal followed.

1. Green first argues that the evidence was insufficient to support his convictions because the DNA evidence was inconclusive.[2] We are not persuaded.

---

[2] Green also argues that trial counsel was ineffective for failing to move for directed verdict on this ground. However, he did not enumerate this issue as error. See *Carcamo v. State*, 348 Ga. App. 383, 392 (2), n. 6 (823 SE2d 68) (2019) ("an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors.") (citations and punctuation omitted). Even so, because the evidence was sufficient to support Green's convictions, "any motion for directed verdict would have failed, and trial counsel's failure to make such a motion thus did not constitute deficient performance." (Citation and punctuation omitted.) *Blount v. State*, 303 Ga. 608, 613 (2) (f) (814 SE2d 372) (2018); see also *Owens v. State*, 324 Ga. App. 198, 202 (1) (b) (749 SE2d 783) (2013) (where evidence is sufficient to support the convictions, a claim for ineffective assistance based on a failure to move for directed verdict fails as a matter of law).

On appellate review of a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or judge the credibility of witnesses, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the offenses charged beyond a reasonable doubt.

(Citation omitted.) *Davis v. State*, ___ Ga. App. ___ (1) (848 SE2d 173, 176 (1)) (2020).

Pursuant to OCGA § 16-6-1 (a) (1), "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will[.]" Carnal knowledge is defined as "any penetration of the female sex organ by the male sex organ." Id.

Incest is committed when a person engages in sexual intercourse with another person whom he knows he is related to by blood or marriage as father and child. OCGA § 16-6-22 (a) (1).

A person commits aggravated child molestation by engaging in an immoral or indecent act involving sodomy with a child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either himself or the child. OCGA § 16-6-4

5

(a) (1), (c). Sodomy includes performing or submitting to any sexual act involving the sex organs of one person and the mouth of another. OCGA § 16-6-2 (a) (1).

Here, the victim is Green's biological daughter and she was 15 years old at the time of the assault. She testified that Green got into her bed, put his mouth on her vagina, put his penis in her mouth, and forcibly penetrated her vagina with his penis after she refused to consent to the act. This evidence is sufficient to satisfy the elements of the above charges. OCGA §§ 16-6-1 (a) (1); 16-6-22 (a) (1); 16-6-4 (a) (1), (c); see also *Tinson v. State*, 337 Ga. App. 83, 85 (1) (785 SE2d 914) (2016) ("Georgia law does not require corroboration of a sexual crime victim's testimony."); OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

Nevertheless, Green contends that the evidence was insufficient because the DNA results were too broad to identify him as the assailant beyond a reasonable doubt. However, our review of the record reveals that Green's trial counsel engaged in a thorough and sifting cross-examination of the forensic biologist to explore the limitations of the DNA results. Essentially, Green asks us to reweigh the evidence, which we may not do. *Davis*, ___ Ga. App. at ___ (1) (848 SE2d at 176 (1)). Rather, it was for "the jury to resolve conflicts in the evidence and to determine the credibility

6

of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted.) *Jones v. State*, 304 Ga. 320, 323 (2) (818 SE2d 499) (2018); see also *Pruitt v. State*, 349 Ga. App. 101, 105 (825 SE2d 490) (2019) ("As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.") (citation omitted).

And, although Green testified and denied the victim's accusations, the jury was under no obligation to believe him. See *Battle v. State*, 305 Ga. 268, 271 (1) (b) (824 SE2d 335) (2019) (jury may reject a defendant's self-serving testimony). To the contrary, because there was other evidence of Green's guilt, including the testimony of the nurse and the forensic interviewer, as well as Green's admission that he had previously been convicted of statutory rape, the jury was entitled to reject his testimony as false and treat it as substantive evidence of his own guilt. See *Daughtie v. State*, 297 Ga. 261, 263-264 (2) (773 SE2d 263) (2015). Accordingly, we find that the evidence was sufficient to support Green's convictions.

2. Green next contends that the trial court erred by disallowing two of his proposed voir dire questions because those questions would have exposed the jurors' bias. We conclude that the trial court did not abuse its discretion in this regard.

7

"The limits a court may place on voir dire questions lie largely within the sound discretion of the court, and we will not interfere with the exercise of that discretion unless it is manifestly abused." *Lester v. State*, 343 Ga. App. 618, 620 (1) (807 SE2d 922) (2017).

Here, the trial court approved all of Green's proposed voir dire questions, but two:

> Does anyone believe that when a child molestation allegation is made by a child or teenager, that it must be true?

> Does anyone believe that a child or teenager could never fabricate an allegation of child molestation?

OCGA § 15-12-133 controls the scope of permissible juror voir dire examinations:

> In the examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, . . . [and] any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto[.]

8

"Voir dire should allow both parties an opportunity to ascertain the ability of the prospective jurors to decide the case on its merits, with objectivity and freedom from bias and prior inclination." (Citation omitted.) *Lester*, 343 Ga. App. at 620 (1). However, "no question should require a response from a juror that might amount to a prejudgment of the case." *Id.*; see also Uniform Superior Court Rule 10.1.

Here, the questions Green requested went directly to the credibility of the victim, and thus to Green's defense that the accusations against him were fabricated. In essence, these questions were designed to determine whether the jurors would accept his defense, and thus impermissibly sought to elicit a prejudgment of the case. As such, the trial court was well within its discretion to reject them. See *Lester*, 343 Ga. App. at 620-621 (1); USCR 10.1.

Moreover, the trial court excused two jurors who indicated they were biased against Green. And during voir dire, Green was permitted to explore whether individual jurors had any personal bias with respect to sex crimes committed against children. Thus, the omission of the above two questions did not prevent Green from exposing juror bias related to sex crimes against children in general, and any possible error was harmless. See *Slack v. State*, 354 Ga. App. 727, 730-731 (1) (841 SE2d

9

231) (2020). Accordingly, the trial court did not abuse its discretion in disallowing the questions.

3. Green contends that the trial court erred by finding that he acquiesced in the waiver of his presence at bench conferences during voir dire. We disagree.

> Embodied within the constitutional right to the courts is a criminal defendant's right to be present and see and hear all the proceedings which are had against him on the trial before the Court. Violations of this due process right are presumed prejudicial, and, absent a waiver by the defendant, require a new trial. . . . The right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. Thus, a "critical stage" of a criminal proceeding is defined as one in which the defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way. Proceedings during which the jury is selected or modified, for example, are a critical stage at which the right to be present attaches.

(Citations and punctuation omitted.) *Brewner v. State*, 302 Ga. 6, 9-10 (II) (804 SE2d 94) (2017).

Here, the trial court held a bench conference at which three prospective jurors were called up in turn to be questioned by the court, the State, and Green's trial counsel, and each juror was dismissed thereafter and immediately exited the

10

courtroom. It is undisputed that Green was not present at the bench conference, and the State concedes Green had a right to be present at this critical stage of the proceedings. *Brewner*, 302 Ga. at 10 (II); see also *Bernier v. State*, 354 Ga. App. 339, 349 (4) (840 SE2d 748) (2020). Our inquiry does not end, however, with the impropriety of Green's exclusion from this bench conference. We next consider whether Green waived his right to be present.

> [T]he right to be present belongs to the defendant, and he is free to relinquish it if he so chooses. The right to be present is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver. As our precedents explain, acquiescence, which is a tacit consent to acts or conditions, may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence. Acquiescence implies a knowledge of those things which are acquiesced in, as one can not acquiesce in a wrong while ignorant that it has been committed.

(Citations and punctuation omitted.) *Burney v. State*, 299 Ga. 813, 820 (3) (b) (792 SE2d 354) (2016). Although Green bears the burden of showing he was denied the right to be present at the bench conference, the State bears the burden to show he

11

waived that right. *Pruitt v. State*, 354 Ga. App. 73, 76 (2) (840 SE2d 597) (2020). Our analysis of whether Green acquiesced in the waiver of his right to be present is fact-intensive, and the trial court's findings of fact are upheld unless clearly erroneous. *Champ v. State*, No. S20A1552, ___ Ga. ___ (2) (c), 2021 WL 536261, at *7 (2) (c) (___ SE2d ___) (2021).

We conclude the State has met its burden. Here, Green had been present in the courtroom while the trial court asked the jurors the qualifying questions set forth in OCGA § 15-12-64 (a), and was therefore able to observe three jurors raise their hands to indicate that they could not be impartial in their consideration of his case. He was then able to observe the trial court calling these jurors to the bench for further questioning, and each juror departing the courtroom thereafter. Moreover, at the new trial hearing, Green's trial counsel testified that it was his practice to inform Green of what was said during any bench conferences outside of his presence, and that Green approved every juror that was seated. By then remaining silent, Green acquiesced in the waiver of his right to be present at the bench conferences. See *Fordham v. State*, 352 Ga. App. 520, 523-524 (1) (835 SE2d 360) (2019) (defendant acquiesced in his exclusion from bench conferences where he was present during jury selection, observed potential jurors indicate that they could not remain impartial and

their subsequent dismissal after further questioning by the court and counsel at the bench); see also *Bernier*, 354 Ga. App. at 349-350 (4) (defendant acquiesced to the waiver of his presence at bench conferences where he "saw jurors being questioned and on two occasions excused, and voiced no objection"); *Bagwell v. State*, 329 Ga. App. 122, 125 (1) (764 SE2d 149) (2014).[3] The trial court did not err in so finding.

4. Green next argues that the trial court erred by disallowing the crime lab reports to go back with the jury during deliberations. We disagree.

At the outset, we note that Green failed to object to the trial court's ruling on this issue. Our review is thus limited to plain error review. See *Rainwater v. State*, 300 Ga. 800, 802 (2) (797 SE2d 889) (2017). To show plain error, Green must establish "that the error was not affirmatively waived; that it was obvious beyond reasonable dispute; that it likely affected the outcome of the proceedings; and that it seriously affected the fairness, integrity, or public reputation of the proceedings."

[3] Green's reliance on *Gillespie v. State*, 333 Ga. App. 565 (774 SE2d 255) (2015) (physical precedent only), is misplaced as it is factually distinguishable. In *Gillespie*, we found that the defendant could not have acquiesced in the waiver of his right to be present at bench conferences where, unlike the case at hand, the trial court had not dismissed the challenged juror immediately following the bench conference and trial counsel did not recall informing the defendant of what had occurred during bench conferences. Id. at 568-569 (1) (a). Moreover, *Gillespie* is physical precedent only, and is therefore not binding on our decision here. Court of Appeals Rule 33.2 (a) (2).

13

*Howard v. State*, 307 Ga. 12, 15 (2) (834 SE2d 11) (2019). "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); OCGA § 24-1-103 (d).

Pretermitting whether the trial court erred by disallowing the DNA reports to go back with the jury during its deliberations, Green cannot show that this decision likely affected the outcome of the proceedings. This is particularly so because neither report was markedly favorable to the defense. Moreover, the forensic biologist was thoroughly examined and cross-examined on these results. And the jury was able to hear the victim's testimony, which remained consistent throughout the investigation, as well as Green's prior conviction, and the testimony of the nurse and the forensic interviewer. In light of this overwhelming evidence of guilt, Green has failed to show plain error. See *Rainwater*, 300 Ga. at 804 (2); *Crankshaw v. State*, 336 Ga. App. 700, 701 (2) (786 SE2d 245) (2016).

5. Green contends the trial court abused its discretion by commenting on the victim's virginity prior to sentencing and by allowing such testimony at trial. These arguments are unavailing.

(a) *Trial court's comment at sentencing.*

14

At the sentencing hearing, the trial court made the following comment: "And now [Green's] daughter is forever going to live the rest of her life with that taken away from her, her virginity, her dignity, and her father." Green did not object to this statement, and the trial court then sentenced him to life without parole on the rape count, thirty years' imprisonment to run concurrent on the incest count, and a life sentence to run concurrent on the aggravated child molestation count.

By failing to object, Green waived this issue on appeal. See *Lanham v. State*, 345 Ga. App. 657, 666 (2) (813 SE2d 184) (2018) (defendant waived issue on appeal by failing to object to prosecutor's statements regarding a prior conviction during sentencing). Nevertheless, because each sentence was within the statutory range of punishment, and given the severity of the crimes, he cannot show he was harmed by the trial court's statement, even if it was made in error. See *Jones v. State*, 343 Ga. App. 180, 186 (7) (806 SE2d 631) (2017) ("Unless affirmative evidence shows otherwise, the trial court is presumed to have exercised its discretion in imposing a sentence.") (citation and punctuation omitted); *Ellicott v. State*, 320 Ga. App. 729, 735-736 (4) (740 SE2d 716) (2013) (defendant could not show trial court's comments at sentencing harmed him where sentence was in the permissible statutory range); see also OCGA § 16-6-1 (b); OCGA § 16-6-22 (b); OCGA § 16-6-4 (d) (1).

15

(b) *Testimony at trial.*

To the extent Green contends that the trial court erred by admitting evidence of the victim's virginity at trial, our review is again limited to plain error because he failed to raise a timely objection to this testimony. *White v. State*, 305 Ga. 111, 120 (3) (823 SE2d 794) (2019); OCGA § 24-1-103 (d).

The victim testified that, after Green undressed her, he asked her if she was a virgin and if she wanted him to be the one who took her virginity. And this statement was also recounted by the investigating officer. Notably, the State did not specifically elicit this testimony from either witness. Nevertheless, the State concedes that this evidence of the victim's past sexual behavior violated the Rape Shield Statute. *White*, 305 Ga. at 118 (1); OCGA § 24-4-412 (a).

Even so, Green cannot show plain error because the admission of this evidence did not likely affect the outcome of his trial. *White*, 305 Ga. at 120 (3). Importantly, the prejudicial effect of the references to the victim's virginity was mitigated by later testimony that she had engaged in some sexual contact with her boyfriend days before the assault. Moreover, in closing argument, Green sought to portray the victim as a liar, who fabricated the accusations in order to cover up the fact that she had consensual sexual intercourse with her boyfriend and was afraid of getting pregnant.

16

In this light, the testimony regarding the victim's virginity merely went to her credibility in general. Moreover, the evidence of Green's guilt was overwhelming regardless of this testimony. Green thus cannot show that the trial court plainly erred by admitting evidence of the victim's past sexual behavior. Id. at 123-124 (3); *Crankshaw*, 336 Ga. App. at 701 (2).

6. Green claims the trial court erred by impermissibly informing the jury of his prior criminal history before it had been put in evidence, and by giving an untimely limiting instruction. Green fails to show how he was harmed even if the trial court erred in this respect.

Prior to trial, the State filed its notice of intent to present evidence of Green's previous statutory rape conviction. Green requested a limiting instruction to be given when the evidence was presented and during the final jury charge. On direct examination, the victim's mother testified that she was aware of previous allegations against Green involving "inappropriate activities" with a fifteen-year-old.[4] Her

---

[4] To the extent Green now claims this testimony was inadmissible hearsay, he does not separately enumerate this claim as error, and offers no argument or legal authority in support of this conclusive statement. We thus deem this claim abandoned. *Cooper v. State*, No. A20A1946, ___ Ga. App. ___, 2021 WL 285960, at *1 (___ SE2d___) (2021); *Carcamo*, 348 Ga. App. at 392 (2), n. 6; Court of Appeals Rule 25 (c) (2).

examination continued and, at its conclusion, the trial court issued a limiting instruction with regard to this testimony. In doing so, the trial court referenced Green's prior statutory rape charge that had not yet been entered into evidence. The trial court issued the limiting instruction again in its final charge to the jury.

Green fails to show how he was harmed by the timing of the trial court's limiting instruction or by its reference to statutory rape because he later admitted to pleading guilty to this charge in his own testimony. See *Castillo v. State*, 309 Ga. App. 555, 557 (710 SE2d 703) (2011) ("It is well settled that harm as well as error must be shown to warrant reversal.") (citation and punctuation omitted). Accordingly, the trial court did not err in this regard.

7. Green next contends that trial counsel rendered ineffective assistance in several respects. We address each claim in turn, and conclude that he has failed to meet his burden to show ineffective assistance of counsel.

> To succeed on a claim that counsel was constitutionally ineffective, [the defendant] must show both that his attorney's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt. 2052, 80 LE.2d 674) (1984). Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. And under

18

the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018).

(a) Green first argues that trial counsel was ineffective for failing to consult or hire experts in DNA testing, sexual assault examinations or general gynecology, and forensic interview techniques, and to seek independent testing of the DNA samples. We disagree.

"An appellate court evaluates counsel's performance from counsel's perspective at the time of trial. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."

(Citation omitted.) *Reyes-Castro v. State*, 352 Ga. App. 48, 67 (4) (833 SE2d 735) (2019). And, "mere speculation on the defendant's part is insufficient to establish *Strickland* prejudice." *Pierce v. State*, 286 Ga. 194, 198 (4) (686 SE2d 656) (2009).

(i) *Failure to hire a DNA expert.*

At the new trial hearing, Green called an opposing expert in DNA analysis, who opined that the test used to match Green's haplotype identified a fairly large population because that DNA profile originates from multiple past generations and expands exponentially over time. The expert further testified that the crime lab should have conducted serological testing to look for the presence of sperm and also tested the victim's clothing for the presence of sperm and/or DNA.

We first note that Green's counsel explored the purported deficiencies in the haplotype results at trial during the cross-examination of the forensic biologist. Moreover, at the new trial hearing, trial counsel testified that the weakness of the DNA evidence was favorable to Green's defense, and he used the deficiencies to Green's advantage during closing argument. As such, trial counsel made a strategic decision to proceed with the perceptibly favorable testimony of the State's forensic biologist at trial, and Green thus cannot show that the failure to hire additional forensic experts to contest the DNA results was patently unreasonable. See

20

*Reyes-Castro*, 352 Ga. App. at 67-68 (4) (trial counsel made a reasonable strategic decision by not calling witnesses at trial that would have no benefit to the defense); see also *Lawton v. State*, 340 Ga. App. 903, 905 (2) (798 SE2d 264) (2017) (trial counsel's decision not to call an expert, but to instead attack the opinion of the State's expert on cross-examination was not unreasonable).

(ii) *Failure to perform independent testing*.

Green cannot show that the verdict would have been affected had trial counsel sought independent testing of the DNA samples and the victim's clothes. First, the results of any such testing are entirely speculative. Second, as noted by Green's trial counsel at the new trial hearing, the results of these tests may have been adverse to Green. As such, he cannot show that he was prejudiced in this regard. See *Pierce*, 286 Ga. at 198 (4).

(iii) *Failure to hire other experts*.

Nor can Green show that he was prejudiced by trial counsel's failure to hire experts in sexual assault testing, gynecology, or forensic interviewing techniques.

"To show prejudice on a claim that trial counsel failed to adequately investigate the case, [Green] had to at least make a proffer as to what additional investigation would have uncovered, and not merely speculate that such information exists and

21

would have made a difference." (Citation and punctuation omitted.) *Lupoe v. State*, 300 Ga. 233, 241 (2) (b) (794 SE2d 67) (2016). But Green made no such proffer with respect to these categories of experts at the new trial hearing. As such, he cannot show that the verdict would have been different, and thus cannot satisfy the prejudice prong of *Strickland*. *Lupoe*, 300 Ga. at 241 (2) (b); see also *Colbert v. State*, 345 Ga. App. 554, 556-557 (2) (813 SE2d 777) (2018); *Madge v. State*, 245 Ga. App. 848, 851 (3) (a) (538 SE2d 907) (2000) ("Absent a proffer of what the testimony of his expert would have been at trial, [defendant] cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel taken the suggested course.").

(b) Green next claims that trial counsel was ineffective for failing to preserve his right to be present at bench conferences during jury selection and at trial. Specifically, he claims that his presence at those during jury selection "would have changed the composition of the jury and thus the outcome of the case." Even assuming trial counsel was deficient in this respect, Green cannot show he was prejudiced as a result.

Green did not testify at the new trial hearing and thus did not share what information he could have offered to his trial counsel at any bench conference. As

22

such, this claim is purely speculative, and "[m]ere speculation will not support a claim of ineffective assistance of counsel." (Citation omitted.) *Ramirez v. State*, 345 Ga. App. 611, 622 (3) (c) (814 SE2d 751) (2018); *Pierce*, 286 Ga. at 198 (4).

(c) Green further claims that trial counsel was ineffective for failing to object to or seek a mistrial following the testimony regarding the victim's virginity. Again, he cannot meet his burden to show he was prejudiced by this alleged deficiency.

In Division 5 (b), supra, we determined that Green failed to show that this evidence likely affected the outcome of the trial under a plain error review. Accordingly, he cannot show that trial court's failure to object to this evidence affected the verdict. See *Lupoe*, 300 Ga. at 243-244 (4), (5) (defendant could not establish plain error or ineffective assistance of counsel where purported inadmissible hearsay did not affect the outcome of the trial); *Bozzie v. State*, 302 Ga. 704, 711 (4) (b) (808 SE2d 671) (2017) ("The prejudice step of the plain-error standard is equivalent to the prejudice prong for an ineffective assistance of counsel claim."). Accordingly, Green has not met his burden to show trial counsel rendered ineffective assistance.

8. Finally, Green claims that he is entitled to a new trial based on the cumulative errors of the trial court and trial counsel. However, "his cumulative error

23

argument fails because there are no errors to cumulate." *Lynn v. State*, ___ Ga. ___ (852 SE2d 843, 846, 853 (4) (c) (iii), n. 5) (2020); *Crider v. State*, 356 Ga. App. 36, 50 (4) (846 SE2d 205) (2020) (where there is no error, there cannot be cumulative error).

For all of these reasons, the trial court properly denied Green's motion for new trial, and we affirm.

*Judgment affirmed. Reese, P. J., and Colvin, J., concur.*